[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10812

_____

D.C. Docket No. 1:16-cv-01720-ODE


DAVIDE M. CARBONE,

Plaintiff-Appellee,

versus

CABLE NEWS NETWORK, INC.,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 13, 2018)

Before TJOFLAT and WILLIAM PRYOR, Circuit Judges, and MURPHY,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of
Michigan, sitting by designation.

This interlocutory appeal requires us to decide whether the motion-to-strike procedure of the Georgia anti-SLAPP (Strategic Lawsuits Against Public Participation) statute, O.C.G.A. § 9-11-11.1, applies in federal court. Davide Carbone filed a complaint against Cable News Network for publishing a series of allegedly defamatory news reports about him and the medical center he administered. CNN moved to strike the complaint under the Georgia anti-SLAPP statute or, in the alternative, to dismiss the complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). The district court denied that motion. It ruled that the special-dismissal provision of the anti-SLAPP statute does not apply in federal court because it conflicts with Rule 12(b)(6) and that Carbone's complaint states a claim for relief. CNN challenges both rulings. We agree with the district court that the special-dismissal provision of the Georgia anti-SLAPP statute does not apply in federal court, but we lack pendent appellate jurisdiction to review whether Carbone's complaint states a claim for relief. We affirm in part and dismiss in part.

## I. BACKGROUND

Carbone alleges that while he served as chief executive officer of St. Mary's Medical Center in West Palm Beach, Florida, CNN published "a series of false and defamatory news reports, articles, and social media posts" asserting that the mortality rate for pediatric open-heart surgery at St. Mary's was 12.5 percent—

more than three times the national average of 3.3 percent. Carbone alleges that CNN intentionally misrepresented the national average mortality rate for open-heart pediatric surgeries by using a figure based on the *total* number of pediatric heart surgeries. As he puts it in his complaint, "[i]nstead of reporting the St. Mary's program's mortality rate based on all pediatric heart surgeries it performed (both open and closed heart surgeries) and comparing that number to the national average of the same computation," CNN reported "the St. Mary's program's mortality rate for the most inherently risky surgeries (open heart) and then compared it to the national rate for all surgeries (including the less risky closed heart surgeries)." The total "risk-adjusted mortality rate for St. Mary's Pediatric Cardiac program was 5.3%, and that figure had a 95% confidence interval that encompassed" the "national average 3.4% mortality rate," which meant that there was "no statistically significant difference between the St. Mary's program's mortality rate and the national average." Carbone alleges that, as a result of this reporting, St. Mary's discontinued its pediatric cardiology program and he was forced to resign as chief executive officer.

CNN moved to strike Carbone's complaint under the Georgia anti-SLAPP statute, O.C.G.A. § 9-11-11.1, or, in the alternative, to dismiss it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The anti-SLAPP statute applies to claims brought against "a person or entity arising from any

3

act . . . which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b)(1). If this condition is satisfied, the statute provides a special procedural mechanism for the defendant to move to strike the claim. That provision requires the claim to be struck "unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim." *Id.*

Discovery is halted during the pendency of a motion to strike, *id.* § 9-11-11.1(d), with two exceptions. First, "if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual malice is relevant to the court's determination." *Id.* § 9-11-11.1(b)(2). Second, "[t]he court, on noticed motion and for good cause shown, may order that specified discovery or other hearings or motions be conducted." *Id.* § 9-11-11.1(d). And "a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case." *Id*. § 9-11-11.1(b.1).

The district court denied CNN's motion. It ruled that the special dismissal procedure created by Georgia's anti-SLAPP statute does not apply in federal court

4

and that Carbone's complaint states a claim for relief under Rule 12(b)(6). The district court determined that Rule 12(b)(6) "directly conflicts with Georgia's anti-SLAPP statute" because the latter creates "a Rule 12(b)(6) 'plus' standard for cases with a First Amendment nexus." The district court reasoned that this conflict arises because "Rule 12(b)(6) requires 'plausibility' on the face of the complaint" but "Section 9-11-11.1(b)(1) requires a probability of prevailing." The district court ruled that Carbone's complaint contained plausible factual allegations that, if true, would prove liability for defamation.

## II. STANDARD OF REVIEW

We review *de novo* federal-versus-state choice-of-law questions, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008), and questions concerning our jurisdiction, *Weatherly v. Ala. State Univ.*, 728 F.3d 1263, 1269 (11th Cir. 2013).

## III. DISCUSSION

We divide our discussion in two parts. First, we consider whether the motion-to-strike procedure created by the Georgia anti-SLAPP statute applies in a federal court sitting in diversity jurisdiction. Second, we address whether we have pendent appellate jurisdiction to review the denial of the motion to dismiss under Rule 12(b)(6).

*A. The Motion-to-Strike Provision of Georgia's Anti-SLAPP Statute Conflicts with Rules 8, 12, and 56.*

CNN argues that we have already held that motion-to-strike provisions of state anti-SLAPP statutes apply in federal court in two decisions, *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014), and *Tobinick v. Novella*, 848 F.3d 935 (11th Cir. 2017), but CNN is mistaken. In *Harris*, we held that a separate provision of an earlier version of Georgia's anti-SLAPP statute, which required a complaint asserting a claim covered by the statute to be "accompanied by a verification making specific representations," conflicted with Federal Rule 11(a) and did not apply in federal court. 756 F.3d at 1359. We addressed the motion-to-strike procedure only to clarify that our holding did not conflict with the decisions of our sister circuits holding that such procedures apply in federal court. *Id.* at 1361–62. And in *Novella*, we affirmed the dismissal of certain state-law claims based on California's anti-SLAPP statute. But we did so because the plaintiff-appellants in that appeal "waived their challenge to the district court's application of California's anti-SLAPP statute based on the *Erie* doctrine," not because we concluded that the statute applies in federal court. *Novella*, 848 F.3d at 944. To be sure, we stated that "[t]he district court acted reasonably in applying California's anti-SLAPP statute," *id.*, but that observation was not part of our holding. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* § 4, at 44 (2016)

6

("[D]igressions speculating on how similar hypothetical cases might be resolved" are dicta and do not "bind future courts.").

The framework for resolving this question is familiar. A federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure "answers the question in dispute." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (majority opinion). If a Federal Rule is "sufficiently broad to control the issue before the Court," *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50 (1980), "it governs . . . unless it exceeds statutory authorization" under the Rules Enabling Act or "Congress's rulemaking power" under the Constitution, *Shady Grove*, 559 U.S. at 398. If no Federal Rule answers the question in dispute, we undertake an "unguided *Erie*" inquiry to decide whether to apply the state statute or federal common law. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965). That choice-of-law inquiry requires us to "apply *Erie* and its progeny to determine 'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'" *Harris*, 756 F.3d 1358 (citation omitted).

Under that framework, we cannot apply the dismissal provision of the Georgia anti-SLAPP statute. The question in dispute is whether Carbone's complaint states a claim for relief supported by sufficient evidence to avoid pretrial dismissal. Taken together, Rules 8, 12, and 56 provide an answer.

7

Rules 8 and 12 define the criteria for assessing the sufficiency of a pleading before discovery. Rule 8(a)(2) provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint's statement of a claim does not satisfy this requirement, it is subject to dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A claim satisfies the requirement of Rule 8(a)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts sufficient to establish that the claim is "plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). And under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Rule 56 governs whether a party's claim is supported by sufficient evidence to avoid pretrial dismissal. Under this Rule, a party is ordinarily entitled to test the proof for a claim only after the conclusion of discovery. *See* Fed. R. Civ. P. 56(d)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (explaining that Rule 56's requirement that a nonmoving party set forth facts proving a dispute of material fact "is qualified" by Rule 56's "provision that summary judgment be refused where the nonmoving party has not had the

8

opportunity to discover information that is essential to his opposition"). A complaint that satisfies Rules 8 and 12 will warrant a trial unless, after discovery, the party moving for summary judgment "shows that there is no genuine dispute as to any material fact" and is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The motion-to-strike provision of the Georgia anti-SLAPP statute "answer[s] the same question" as Rules 8, 12, and 56, but it does so in a way that conflicts with those Rules. *Shady Grove*, 559 U.S. at 401. For the class of claims that it governs, the anti-SLAPP statute defines the conditions under which a court must dismiss a claim before trial for insufficient pleading or proof.

The standard for pleading imposed by the anti-SLAPP statute differs from Rules 8 and 12 by requiring the plaintiff to establish "a *probability*" that he "will prevail on the claim" asserted in the complaint. O.C.G.A. § 9-11-11.1(b)(1) (emphasis added). In contrast, the plausibility standard under Rules 8(a) and 12(b)(6) plainly "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement . . . ." (citation and internal quotation marks omitted)).

9

The motion-to-strike procedure also conflicts with Rule 56. The Georgia statute "contemplates a substantive, evidentiary determination of the plaintiff's probability of prevailing on his claims." *Rosser v. Clyatt*, — S.E.2d —, No. A18A0843, slip op. at 7 (Ga. Ct. App. Nov. 2, 2018). But to avoid summary judgment under Rule 56, a nonmovant need only "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). In determining whether the nonmoving party has satisfied this burden, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Georgia statute requires the plaintiff to establish that he will likely prevail if the case proceeds to trial. That evidentiary burden is far more demanding than one requiring him only to identify material factual disputes that a jury could reasonably resolve in his favor, and it requires the court to consider whether the factual underpinnings of the plaintiff's claim are likely true. And although Rule 56 does not generally permit a defendant to test a plaintiff's claim for evidentiary sufficiency before discovery, the Georgia anti-SLAPP statute provides that "[a]ll discovery . . . shall be stayed upon the filing" of a "motion to strike . . . until a final decision on the motion," unless the plaintiff satisfies the good cause standard. O.C.G.A. § 9-11-11.1(d). The Georgia statute deprives the plaintiff of the "period

10

for discovery[, unless the plaintiff shows good cause,] before defendant can test plaintiff's case for [evidentiary] sufficiency" conferred by the Federal Rules. *Makaeff v. Trump Univ.* (*Makaeff I*), 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, C.J., concurring).

The Georgia anti-SLAPP statute also compromises the joint operation of Rules 8, 12, and 56. Taken together, these Rules provide a comprehensive framework governing pretrial dismissal and judgment. Under Rule 12(d), a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court . . . ." In other words, the Rules contemplate that a claim will be assessed on the pleadings alone or under the summary judgment standard; there is no room for any other device for determining whether a valid claim supported by sufficient evidence to avoid pretrial dismissal.

In short, Rules 8, 12, and 56 express "with unmistakable clarity" that proof of probability of success on the merits "is not required in federal courts" to avoid pretrial dismissal, and that the evidentiary sufficiency of a claim should not be tested before discovery. *Hanna*, 380 U.S. at 470. But the relevant provisions of the Georgia anti-SLAPP statute explicitly require proof of a probability of success on the merits without the benefit of discovery. The result is a "direct collision"

11

between the Federal Rules and the motion-to-strike provision of the Georgia statute. *Id.* at 472.

CNN and its *amici* contend that Rules 12 and 56 establish only minimum requirements that claimants must satisfy at the pleading and pretrial stages that the Georgia anti-SLAPP statute may supplement without contradiction. They assert that neither Rule creates an affirmative entitlement to proceed to discovery or trial because they do not contain the kind of "rights-conferring language" that was critical to the Supreme Court's reasoning in *Shady Grove*. And they argue that the Supreme Court's decision in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), prohibits us from holding that there is a conflict between the Federal Rules and a state statute when the Federal Rules create a necessary-but-insufficient set of requirements. As they see it, the Federal Rules at issue merely "provide various theories upon which a suit may be disposed of before trial," but they "do not provide that a plaintiff is entitled to maintain his suit if their requirements are met." *Makaeff v. Trump Univ.* (*Makaeff II*), 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J., concurring in the denial of rehearing en banc).

Even if the relevant Federal Rules did not create an affirmative entitlement to proceed to discovery or trial, it would not follow that there is no conflict between the Federal Rules and the anti-SLAPP statute. The existence of a conflict does not invariably depend on whether the state law abrogates a procedural right

12

conferred by the Federal Rules, but instead turns on whether the Federal Rules and the state statute "answer the same question." *Shady Grove*, 559 U.S. at 401. Rules 8, 12, and 56 govern whether Carbone's claim states a valid claim supported by sufficient evidence to avoid pretrial dismissal. Those Rules are "'sufficiently broad' . . . to 'control the issue' before the court, thereby leaving no room for the operation" of the motion-to-strike procedure. *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) (citations omitted).

CNN responds that the anti-SLAPP statute does not attempt to answer the question whether the plaintiff has alleged a claim that is plausible on its face, but instead answers whether the plaintiff's claim satisfies a probability requirement. But this argument conflates the question a rule or statute is designed to answer with the standard it requires the court to apply in answering that question. Rules 8, 12, and 56 answer the question of sufficiency by requiring the plaintiff to allege a claim that is plausible on its face and to present evidence sufficient to create a triable issue of fact. The Georgia anti-SLAPP statute answers the same question by requiring the plaintiff to allege and prove a probability of success on the merits. CNN's response relies on an artificially narrow construction of the Federal Rules as controlling only on whether their standards have been satisfied. But the Supreme Court has explicitly rejected the notion that "the Federal Rules of Civil Procedure

13

are to be narrowly construed in order to avoid a 'direct collision' with state law." *Walker*, 446 U.S. at 750 n.9.

Rules 8, 12, and 56 create an affirmative entitlement to avoid pretrial dismissal that would be nullified by the Georgia anti-SLAPP statute if it were applied in a federal court. Rule 8 provides that a complaint "that states a claim for relief must contain" three components: (1) "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." By negative implication, the enumeration of this series of requirements excludes other requirements that must be satisfied for a complaint to state a claim for relief. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (Under the "interpretive canon, *expressio unius est exclusio alterius*, 'expressing one item of [an] associated group or series excludes another left unmentioned.'" (citation omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 10, 107 (2012) ("The expression of one thing implies the exclusion of others."). A complaint that satisfies these requirements will withstand pretrial dismissal under Rule 12(b)(6), which ordinarily entitles the plaintiff to proceed to discovery. *See* Fed. R. Civ. P. 26(b)(1), 56(d)(2); *Anderson*, 477 U.S. at 250 n.5.

14

To be sure, Congress has formulated additional requirements governing the sufficiency of a complaint as exceptions to the general rule.  For example, Rule 9(b) requires fraud plaintiffs to "state with particularity the circumstances constituting fraud." And the Private Securities Litigation Reform Act requires certain securities-law plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

CNN's *amici* contend that "[i]f Rules 12 and 56 affirmatively authorized any plaintiff who meets their requirements to proceed to trial, they would contradict these provisions," but this argument reflects a failure to grasp the teachings of *Shady Grove*. There, the Supreme Court explained that "[t]he fact that Congress has created specific exceptions to Rule 23 hardly proves that the Rule does not apply generally. In fact, it proves the opposite." *Shady Grove*, 559 U.S. at 400 (majority opinion). "If Rule 23 did not authorize class actions across the board, the statutory exceptions would be unnecessary." *Id.* In the same way, if Rule 8 did not authorize a plaintiff to maintain suit and proceed to discovery, Congress would not have needed to add novel requirements for certain categories of claims. The decision whether to dismiss a complaint on alternative grounds would be effectively discretionary.

15

The "minimum requirements" interpretation of Rule 56 fails for similar reasons. The Rule states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Rule, in conjunction with other Rules governing pretrial dismissal, qualifies the background entitlement to a trial affirmed by Federal Rules 38 and 39. *See* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."); Fed. R. Civ. P. 39(b) ("Issues on which a jury trial is not properly demanded are to be tried by the court."). It follows that if a plaintiff satisfies the requirements of Rule 56 and avoids summary judgment, he is entitled to a trial on the merits unless the court is required to grant the motion for summary judgment or dismiss the action on some other ground supported by the Federal Rules or some provision of federal law. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1334 (D.C. Cir. 2015) (Kavanaugh, J.) ("Under the Federal Rules, a plaintiff is generally entitled to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment.").

The anti-SLAPP statute abrogates the entitlements conferred by these Rules. Under Rules 8 and 12(b)(6), a plaintiff is ordinarily entitled to maintain his suit and proceed to discovery if his complaint states a claim for relief that is plausible on its

16

face. The anti-SLAPP statute abrogates that entitlement in cases that fall within its ambit by requiring the plaintiff to establish that success is not merely plausible but probable. And under Rule 56, a plaintiff has a right to proceed to trial if he proves the existence of a genuine dispute of material fact. The anti-SLAPP statute would nullify that entitlement by requiring the plaintiff to prove that it is likely, and not merely possible, that a reasonable jury would find in his favor and to do so while relying exclusively on evidence he was able to obtain without discovery.

These considerations also establish that *Cohen* does not control the outcome of this appeal. In *Cohen*, the Supreme Court held that there was no conflict between a New Jersey statute that required certain plaintiffs to post a bond as a security for costs as a prerequisite to bringing a shareholder derivative action and former Federal Rule 23 (now Rule 23.1). 337 U.S. at 557. The Federal Rule requires that the complaint in a derivative suit "be verified by oath and to show that the plaintiff was a stockholder at the time of the transaction of which he complains or that his share thereafter devolved upon him by operation of law." *Id*. at 556. These requirements did not conflict with the state statute because they "neither create[d] nor exempt[ed] from liabilities, but require[d] complete disclosure to the court and notice to the parties in interest." *Id*. The New Jersey statute neither abrogated rights conferred by the Federal Rules nor addressed the questions of disclosure and notice. Instead, it was designed only to protect against "strike suits"

17

that were "brought not to redress real wrongs, but to realize upon their nuisance value." *Id.* at 548. Rules 8, 12, and 56, by contrast, constitute an exhaustive set of requirements governing pretrial dismissal and entitlements to discovery and a trial on the merits. And unlike the state statute at issue in *Cohen*, the Federal Rules and the Georgia anti-SLAPP statute address the same question: whether a complaint states a valid claim supported by sufficient evidence to warrant a trial on the merits.

CNN and its *amici* also contend that there is no conflict between Rules 12 and 56 and the motion-to-strike provision because each pursues a "separate purpose[]" and operates in a separate "sphere of coverage." *Walker*, 446 U.S. at 752 & n.13. As they see it, "[t]he object of Rules 12 and 56 is to winnow claims and defenses over the course of litigation," while the object of the anti-SLAPP law is to protect the rights to petition and freedom of speech. They also argue that the existence of Georgia rules of procedure with the same content as Rules 12 and 56 proves that the anti-SLAPP statute can coexist with those rules. *See* O.C.G.A. § 9-11-12(b)(6); *id.* § 9-11-56.

The problem with the argument about the purposes of the relevant Federal Rules and the anti-SLAPP statute is that the means by which the Georgia law pursues its special purpose is by *winnowing claims and defenses in the course of litigation*, just like Rules 12 and 56. That the aim of the statute is to protect First

18

Amendment rights is irrelevant, because the anti-SLAPP statute advances that end by imposing a requirement on a plaintiff's entitlement to maintain a suit over and above the requirements contemplated by the Federal Rules that control the same question. *Cf. Shady Grove*, 559 U.S. at 403 ("Even if its aim is to restrict the remedy a plaintiff can obtain, [the state statute] achieves that end by limiting a plaintiff's power to maintain a class action.") (majority opinion). Indeed, if anything, the Georgia statute's "mode of operation" is sufficiently similar to that of the relevant Federal Rules "to indicate that the Rule[s] occup[y] the statute's field of operation so as to preclude its application in federal diversity actions." *Burlington*, 480 U.S. at 7.

Nor does the existence of Georgia state-law analogues of Rules 12 and 56 prove that the federal counterparts of those Rules and the anti-SLAPP statute occupy separate spheres. *See* O.C.G.A. § 9-11-12(b)(6); *id.* § 9-11-56. The existence of equivalent provisions of Georgia law proves that rules with the same content as Federal Rules 12 and 56 can coexist with the anti-SLAPP statute in a single system of law. But the test of whether a conflict between the Federal Rules and a state statute exists is not whether it is logically possible for a court to comply with the requirements of both, but whether the Federal Rules in question are "sufficiently broad to control the issue before the Court." *Walker*, 446 U.S. at 749–50.

19

*Burlington* is instructive. There, the Supreme Court held that an Alabama statute that imposed a mandatory affirmance penalty on unsuccessful appeals conflicted with Rule 38 of the Federal Rules of Appellate Procedure, *see* 480 U.S. at 4, which provides that a court "may award just damages and single or double costs to the appellee" if it determines that an appeal is "frivolous." Fed. R. App. P. 38. The Court rejected the argument that there was no conflict with Rule 38 "because Alabama has a similar Appellate Rule which may be applied in state court alongside the affirmance penalty statute." *Burlington*, 480 U.S. at 7. Although it was possible to apply both the statute and Rule 38, the Alabama statute conflicted with the "case-by-case approach" adopted by the Federal Rules by "preclud[ing] any exercise of discretion within its scope of operation." *Id.* at 8. The motion-to-strike procedure's "mode of operation" likewise "unmistakably conflicts" with that of the Federal Rules by mandating a test of sufficiency that the Rules reject. *Id.* at 7.

CNN also argues that the function of the motion-to-strike procedure is to "define the scope" of "state-created right[s]," *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring), and not to answer the question whether a complaint is sufficient to withstand pretrial dismissal, but this argument is a nonstarter. The anti-SLAPP statute "creates no substantive rights; it merely provides a procedural mechanism for vindicating existing rights." *Makaeff I*, 715 F.3d at 273 (Kozinski,

20

C.J., concurring). The Georgia statute does not purport to alter a defendant's rights to petition and freedom of speech under the Federal and Georgia Constitutions. Nor could it. The only change effectuated by the Georgia statute is to make it easier for a defendant to avoid liability for conduct associated with the exercise of those rights by providing a special *procedural* device—a "motion to strike"—that applies a heightened burden to the claims that fall within its ambit. And by its plain terms, the motion-to-strike provision of the statute applies to causes of action created by Georgia law and claims that derive from the law of other states or the federal government alike. *See* O.C.G.A § 9-11-11.1(b)(1) (restricting availability of the motion to strike only to "claim[s] for relief . . . arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech").

CNN relies on several decisions of our sister circuits holding that similar motion-to-strike provisions of state anti-SLAPP statutes apply in federal court. *See Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999); *see also Block v. Tanenhaus*, 815 F.3d 218, 221 (5th Cir. 2016) (assuming without deciding that an anti-SLAPP statute applies in federal court); *Cuba v. Pylant*, 814 F.3d 701, 706 & n.6 (5th Cir. 2016) (same); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013) (same). *But see Abbas*, 783 F.3d at 1333–37 (holding that the

21

District of Columbia's anti-SLAPP statute does not apply in federal court). Some of these decisions assume that state anti-SLAPP statutes apply in federal court with virtually no analysis. Of the precedential decisions of our sister circuits to address this issue, only *Godin* and *Newsham* attempt to explain that there is no conflict between the Federal Rules and state anti-SLAPP statutes akin to Georgia's statute.

We are not persuaded by the reasoning of these decisions. In *Godin*, the First Circuit concluded that there was no conflict between the Federal Rules and Maine's anti-SLAPP statute because Rule 12(b)(6) "provide[s] a mechanism to test the sufficiency of the complaint," and Rule 56 enables "parties to secure judgment before trial on the basis that there are no disputed material issues of fact," while that statute considers whether the plaintiff can "meet the special rules Maine has created to protect . . . petitioning activity against lawsuits." 629 F.3d at 89. This reasoning mirrors CNN's argument that the question in dispute is whether the standards of the applicable Federal Rules are satisfied and not whether a complaint states a valid claim supported by sufficient evidence to avoid pretrial dismissal. We reject it for the same reasons. And in *Newsham*, the Ninth Circuit held that there was no conflict between California's anti-SLAPP statute and the Federal Rules based on the Supreme Court's decision in *Cohen* and the premise that the anti-SLAPP statute "is crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition

22

for redress of grievances.'" 190 F.3d at 973 (quoting Cal. Civ. P. Code § 425.16(a)). As we have explained, the former argument relies on a misreading of *Cohen*, and the latter argument fails to appreciate that a special purpose distinct from that of the relevant Federal Rules is insufficient to eliminate a conflict between the Federal Rules and a state statute.

We find then-Judge Kavanaugh's reasoning in his opinion for the District of Columbia Circuit in *Abbas* far more convincing. As he explained, "[f]or the category of cases that it covers," an anti-SLAPP statute with a probability requirement "establishes the circumstances under which a court must dismiss a plaintiff's claim before trial—namely, when the court concludes that the plaintiff does not have a likelihood of success on the merits." *Abbas*, 783 F.3d at 1333. "But Federal Rules of Civil Procedure 12 and 56 'answer the same question' about the circumstances under which a court must dismiss a case before trial." *Id.* at 1333–34. And those Rules "answer that question differently: They do not require a plaintiff to show a likelihood of success on the merits." *Id.* at 1334.

Because the dismissal provision of the Georgia anti-SLAPP statute conflicts with the Federal Rules, it "cannot apply in diversity suits" unless Rules 8, 12, and 56 are "ultra vires" because they fall beyond the scope of the power delegated in the Rules Enabling Act or congressional powers over the operation of the federal courts. *Shady Grove*, 559 U.S. at 399. The Rules Enabling Act empowers the

23

Supreme Court to "prescribe general rules of practice and procedure and rules of evidence" for the federal courts, 28 U.S.C. § 2072(a), but this power is subject to the limitation that such rules "shall not abridge, enlarge or modify any substantive right," *id.* § 2072(b). As the Supreme Court has explained, a federal rule does not exceed the scope of the power delegated the Act if it "really regulates procedure," meaning that the rule governs "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941); *see also Hanna*, 380 U.S. at 470–71; *Burlington*, 480 U.S. at 8. A federal rule falls within Congress's power under "the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause)" if it is "rationally capable of classification" as procedural. *Hanna*, 380 U.S. at 472. The Federal Rules have "presumptive validity under both the constitutional and statutory constraints." *Burlington*, 480 U.S. at 6.

We have little difficulty concluding that Rules 8, 12, and 56 comply with the Rules Enabling Act and the Constitution. Those Rules are valid under the Rules Enabling Act because they define the procedures for determining whether a claim is alleged in a sufficient manner in a complaint and whether there is a genuine dispute of material fact sufficient to warrant a trial. These Rules "affect[] only the process of enforcing litigants' rights and not the rights themselves," *Burlington*,

24

480 U.S. at 8, and thus "really regulate procedure." *Sibbach*, 312 U.S. at 14; *see also Shady Grove*, 559 U.S. at 404 (majority opinion) (concluding that pleading standards and rules governing summary judgment are "addressed to procedure"). And if a rule "really regulates procedure," it must be "rationally capable of classification" as procedural, so the Rules also fall within the scope of the congressional power over the federal courts. Because Rules 8, 12, and 56 are valid under the Rules Enabling Act and the Constitution and govern the same basic question as the Georgia anti-SLAPP statute, the motion-to-strike procedure created by that statute cannot apply in federal court.

### B. We Lack Jurisdiction to Review the Denial of the Motion to Dismiss for Failure to State a Claim.

CNN also asks us to review the denial of its motion to dismiss under Rule 12(b)(6), but we lack jurisdiction to review this ruling in an interlocutory appeal. We have interlocutory jurisdiction to consider whether the special dismissal procedure created by Georgia's anti-SLAPP statute applies in federal court under the collateral-order doctrine. *Harris*, 756 F.3d at 1355–57. We may exercise pendent jurisdiction over the denial of CNN's motion to dismiss only if that issue "is 'inextricably intertwined' with or 'necessary to ensure meaningful review' of the appealable issue." *Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir.

25

1999)). The issue whether the district court's ruling on CNN's motion to dismiss was correct does not fall under either category.

Whether the anti-SLAPP statute's motion-to-strike applies in federal court is a pure question of law that we may resolve without touching on the legal or factual merits of Carbone's complaint. "Because we may resolve" this issue "without reaching the merits" of CNN's motion to dismiss, "the latter issue does not come under either of these categories and thus does not fall within our pendent appellate jurisdiction." *Summit Med. Assocs.*, 180 F.3d at 1335 (quoting *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998)); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 900–02 (9th Cir. 2010) (holding that pendent jurisdiction is unavailable over a motion to dismiss under Federal Rule 12(b)(6) in an appeal from a denial of a motion to strike under an anti-SLAPP statute).

We reject the argument of CNN that the denials of its motion to strike and of its motion to dismiss are inextricably intertwined with one another because they "implicate[] the same facts and the same law." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (citation omitted). CNN appears to read *Smith* to endorse the proposition that pendent jurisdiction is available when orders deal with the same facts and law to any degree. But that decision used the phrase "implicate[] the same facts and the same law" only as shorthand to describe a ruling that is "inextricably intertwined" with or over which the exercise of jurisdiction is

26

"necessary to ensure meaningful review" of "an appealable decision." *Id.* Because the order denying CNN's motion to dismiss does not fit within either category, *Smith* provides no basis for exercising pendent jurisdiction.

In any event, resolving the issue whether an anti-SLAPP statute applies in federal court does not require us to engage with any of the factual allegations of Carbone's complaint, and the law governing each issue is plainly distinct. To resolve the appealable issue, we ask whether the Federal Rules "answer the same question" as the relevant provisions of the anti-SLAPP statute and whether the relevant Federal Rules are valid under the Rules Enabling Act and the Constitution. *Shady Grove*, 559 U.S. at 401. To review the denial of CNN's motion under Rule 12(b)(6), by contrast, we would consider whether Carbone's complaint alleges facts sufficient to state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. So it cannot be said that both issues concern the same facts or are governed by the same law.

CNN cites two decisions in which we held that we had pendent jurisdiction over a motion to dismiss, *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000), and *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331 (11th Cir. 2007), but both are inapposite. Neither decision concerned a motion to dismiss for failure to state a claim under Rule 12(b)(6), let alone endorsed the generic proposition that pendent jurisdiction is available over an order denying a

27

motion to dismiss as a matter of course. In *S & Davis International*, we held that an order denying foreign sovereign immunity "based on the 'commercial activity exception' to sovereign immunity which has a 'direct effects' component" was "inextricably intertwined with the 'minimum contacts' component of the personal jurisdiction issue" raised by the defendant's motion to dismiss under Rule 12(b)(1). 218 F.3d at 1297–98. Resolution of the issue over which we had interlocutory jurisdiction would have "entailed a finding of minimum contacts" and resolved whether the defendant's motion to dismiss for lack of personal jurisdiction should have been granted. *Id.* at 1298 (citation omitted). Nothing comparable is true of the issues presented in this appeal. And in *McMahon*, we held that orders denying immunity from claims arising incident to military service under *Feres v. United States*, 340 U.S. 135 (1950), and denying a motion to dismiss on political-question grounds were "inextricably intertwined," which licensed pendent jurisdiction over the latter order. 502 F.3d at 1357. Because of the nature of the defenses asserted and the facts of the appeal, review of both orders turned on whether there was a "need to avoid judicial interference with sensitive military judgments." *Id*. So in *McMahon*, as in *S & Davis International*, the pendent issue overlapped with "the order over which we [had] jurisdiction." *McMahon*, 502 F.3d at 1357.

There is no sense in which our review of the denial of CNN's motion to strike overlaps with the issues we would need to consider to review the denial of

28

CNN's motion to dismiss under Rule 12(b)(6). "[W]e cannot consider" the ruling on the motion to dismiss "without exceeding the scope of our interlocutory jurisdiction." *Black*, 811 F.3d at 1270 (emphasis omitted). So we express no view about the denial of the motion to dismiss.

## IV. CONCLUSION

We **AFFIRM** the denial of the motion to strike and **DISMISS** the appeal of the denial of the motion to dismiss.