[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10705
_____

D.C. Docket No. 1:16-cv-00093-MW-GRJ


SABAL TRAIL TRANSMISSION, LLC,

Plaintiff-Appellant,

versus

18.27 ACRES OF LAND IN LEVY COUNTY,
LEE A. THOMAS, as successor sole Trustee of the Trust Agreement for Lee A.
Thomas and Beverly J. Thomas Dated October 1, 2003, et al.,

Defendants-Appellees.

_____

No. 19-10722
_____

D.C. Docket No.  1:16-cv-00095-MW-GRJ


SABAL TRAIL TRANSMISSION, LLC,

Plaintiff-Appellant,

versus

2.468 ACRES OF LAND IN LEVY COUNTY, FLORIDA,

RYAN B. THOMAS, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(August 3, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, Circuit Judge, and MOORE,[*] District Judge.

PER CURIAM:

Sabal Trail Transmission, LLC, appeals from the judgments awarding two landowners compensation for the easement interests it acquired by eminent domain to construct a natural-gas pipeline on their lands. After a five-day trial, a jury awarded $861,264 to Lee Thomas and $463,439 to Ryan Thomas. Sabal Trail seeks a new trial on the grounds that the landowners lacked a sufficient foundation to testify about the value of their land after the pipeline encumbered it and that the district court gave erroneous jury instructions and permitted improper arguments of opposing counsel. Sabal Trail also challenges the ruling that the landowners are entitled to recover their attorney's fees and costs. We conclude that the district court committed no error in admitting the landowner testimony and that any errors

_____

[*] Honorable K. Michael Moore, Chief United States District Judge for the Southern District of Florida, sitting by designation.

in the jury instructions or arguments of opposing counsel did not prejudice Sabal Trail, so we affirm the awards of compensation. And because the district court has not set the amount of attorney's fees and costs to award, we conclude that the ruling on attorney's fees and costs is not final and dismiss the appeals of that ruling.

## I. BACKGROUND

Sabal Trail commenced these actions to condemn easements needed to build a natural-gas pipeline through two adjacent properties in Levy County, Florida: an 837-acre farm owned by Lee Thomas and a 40-acre residential tract owned by Lee's son, Ryan Thomas. The Thomas family grows watermelons and peanuts, tends cattle, and boards horses on the farm. Ryan operates the farm and lives on the adjoining 40-acre tract with his two children. After Sabal Trail filed the condemnation actions, the district court granted it immediate possession of the land. Sabal Trail then built the pipeline across the two properties.

Sabal Trail and the Thomas family could not agree on compensation for the taking, so the district court held a jury trial on that issue. The jury awarded $861,264 to Lee Thomas, including $782,083 in severance damages for the loss in value the pipeline caused to the remainder of the property. It awarded $463,439 to Ryan Thomas, including $451,654 in severance damages.

Sabal Trail challenges only the awards of severance damages, which

exceeded the expert opinions on severance damages but fell below the opinions of the landowners. Lee and Ryan both testified that the pipeline reduced the value of the farm property by 12 percent, for a total of $955,250 in severance damages. And Ryan testified that the pipeline reduced the value of his residential property by 60 percent, for a total of $541,989 in severance damages.

Lee testified that he earned a degree in agricultural economics and then trained as an appraiser and lender for farm property after college. Throughout his life, he bought and sold property in Levy County, including farm property. Because of the pipeline, he explained, market participants would now perceive the farmland as having less use and value. He testified that "you never know when" pipeline maintenance workers might show up and interrupt "family get-togethers . . . , fish fries, Thanksgiving, and stuff like that." The "anticipation" and "uncertainty" of danger from the pipeline could also negatively affect the value of the land.

Ryan testified that he is a farmer and certified crop adviser with a bachelor's degree in food and resource economics. He worked with his father over the years to purchase the property that makes up the farm and to sell property in Levy County. Ryan helped his father improve the farmland to optimize it for running a commercial watermelon and peanut growing operation. He also improved and renovated the existing home where he now lives on the adjacent residential

4

property. He testified that certain parts of the farm are less productive because of water issues the pipeline caused. And because Sabal Trail removed trees from his residential property to build the pipeline, his home was now visible from the highway. Finally, Ryan expressed his opinion that people would not want to live in a house that was 300 feet from a pipeline because "something could really seriously go wrong."

Sabal Trail objected to Lee's and Ryan's opinion testimony before, during, and after trial. It agreed that the landowners could offer general opinion testimony about the impact of the pipeline on their property values—that is, they could testify that the pipeline reduced their property values. But Sabal Trail argued that Lee and Ryan were not qualified to testify about *how much* their properties declined in value after the pipeline encumbered them because they had never bought or sold pipeline-encumbered property. The district court overruled Sabal Trail's objections at trial and denied its motion for a new trial.

Sabal Trail also objected to some language in the jury instructions. Before trial, the district court ruled that state law, not federal law, governed the compensation the landowners were due. Consistent with that ruling, the jury instructions referred to "full compensation" under the Florida Constitution as the relevant standard instead of "just compensation" under the Fifth Amendment to the United States Constitution. Sabal Trail objected to the term "full compensation"

and the references to the Florida Constitution in the jury instructions. It argued that the instructions should instead use the term "just compensation" and should reference the United States Constitution. But Sabal Trail did not object to the substance of the instructions about how to determine the "full compensation" due the landowners; it objected only to the terms "full compensation" and "Florida Constitution."

Consistent with the jury instructions and the pretrial ruling that state law applied, counsel for the landowners consistently referred to "full compensation" under the Florida Constitution as the applicable standard in opening statements, during trial, and in closing arguments. During closing arguments, counsel for the landowners suggested that "full compensation" under the Florida Constitution provided greater protection for property rights than "just compensation" under the United States Constitution. Sabal Trail never objected to this argument or other references to "full compensation" by opposing counsel.

Following trial, the landowners moved for attorney's fees and costs. The district court ruled that the landowners were entitled to recover their litigation expenses from Sabal Trail based on its prior ruling that Florida's "full compensation" standard applied. But it deferred consideration of the amount of fees and costs to award until a later date.

6

## II. STANDARDS OF REVIEW

A few different standards govern our review. We review evidentiary rulings for an abuse of discretion. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1103 (11th Cir. 2005). "We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party, but the district court is given wide discretion as to the style and wording employed in the instructions." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1276 (11th Cir. 2008) (citations omitted). When a litigant fails to object in the district court to the statements or arguments of opposing counsel, we review them only for plain error. *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1128 (11th Cir. 1993).

## III. DISCUSSION

Sabal Trail raises three different arguments on appeal. It first argues that the district court abused its discretion by allowing the landowners to testify about the impact of the pipeline on their property values. Second, it seeks a new trial on the ground that the district court gave erroneous jury instructions and allowed opposing counsel to make improper arguments. Third, Sabal Trail challenges the ruling on attorney's fees and costs.

"As a general rule, an owner of property is competent to testify regarding its value." *Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cty.*, 947

7

F.3d 1362, 1368 (11th Cir. 2020) (internal quotation marks omitted). But this general rule has an important qualification: a landowner must have some basis for his valuation testimony and cannot testify based on pure speculation. *See Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1250–51 (11th Cir. 2018). In *3.921 Acres*, for example, we upheld the admission of landowner opinion testimony about the value of property after a pipeline encumbered it because the testimony rested on the landowner's "personal knowledge" from selling unencumbered nearby properties. 947 F.3d at 1369. In contrast, *Williams* upheld the exclusion of landowner testimony that a home was "valueless" after contamination because that testimony was "pure speculation." 889 F.3d at 1250–51.

Lee and Ryan Thomas satisfied the low bar of providing some basis for their valuation testimony. Lee trained as a land appraiser early in his career. Both men bought and sold property in Levy County over the years and knew what prospective purchasers would be looking for in a piece of property. And they explained the negative impact of the pipeline on their farming operations and residential life. Although Lee and Ryan provided little explanation for the specific values they testified to, we cannot say their testimony was purely speculative or that the district court abused its considerable discretion in admitting it. *See United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) ("[T]he deference that is the hallmark of abuse-of-discretion review requires that we not reverse an

8

evidentiary decision of a district court unless the ruling is manifestly erroneous." (internal citations and quotation marks omitted)).

Sabal Trail bases its argument for a new trial on the premise that the correct standard for compensation in this condemnation proceeding is "just compensation" under the Fifth Amendment, U.S. Const. amend. V, not "full compensation" under the Florida Constitution, Fla. Const. art. X, § 6(a). For that reason, it complains about the references to "full compensation" in the jury instructions and arguments of opposing counsel. This argument fails.

We conclude that neither the jury instructions nor the arguments of opposing counsel warrant a new trial. When considering a challenge to jury instructions, "[w]e will reverse the verdict of the jury only where the appellant shows both error and prejudice." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 979 F.2d 823, 824 (11th Cir. 1992). Even if the references to "full compensation" were erroneous, Sabal Trail has not established prejudice.

Sabal Trail has not identified any differences between the federal and state standards for measuring land value or severance damages that are relevant to this case. Indeed, Sabal Trail did not object to the substance of the jury instructions, which explained that "[f]ull compensation includes the fair market value of the property taken plus whatever damages result to the owner's remaining lands as a result of the taking." It argued only that that the references to "full compensation"

9

should be changed to "just compensation," without advocating any change in how to determine the relevant amount of compensation. There is no reason to think that substituting the words "just compensation" for "full compensation"—without altering the substance of the instructions—would have caused the jury to return a different verdict. So Sabal Trail has failed to establish prejudice and is not entitled to a new trial based on the jury instructions. *See Mosher*, 979 F.2d at 826–27.

To obtain a new trial based on the opening statements or closing arguments of opposing counsel, "the challenged argument must be plainly unwarranted and clearly injurious." *Knight ex rel. Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 818 (11th Cir. 2017) (internal quotation marks omitted). "The comments must have been of a nature to impair calm and dispassionate consideration by the jury." *Id.* (internal quotation marks omitted). And because Sabal Trail did not object to the arguments of opposing counsel in the district court, we review only for plain error, a finding that "is seldom justified in reviewing argument of counsel in a civil case." *Oxford Furniture Cos.*, 984 F.2d at 1128 (internal quotation marks omitted).

The references to "full compensation" by opposing counsel were not plainly unwarranted and clearly injurious, let alone prejudicial enough to rise to the level of plain error. Although counsel suggested in closing argument that Florida's "full compensation" standard provides greater protection to landowners than the "just compensation" standard of the Fifth Amendment, the jury never received any

information about *how* those standards might differ. And immediately after making the challenged statements, counsel explained that "[t]he important phraseology is that full compensation *includes the fair market value of the property to be taken and any damages to the remainder property*"—the very standard the district court used to instruct the jury and to which Sabal Trail lodged no objection. Sabal Trail is not entitled to a new trial because the references to "full compensation" did not plainly "impair calm and dispassionate consideration by the jury." *Knight*, 856 F.3d at 818 (internal quotation marks omitted).

Finally, Sabal Trail challenges the ruling that it must pay the landowners' attorney's fees and costs. But the district court has not set the amount of fees and costs to award, so no final decision yet exists on this issue. *3.921 Acres of Land*, 947 F.3d at 1370. Without a final decision, we lack jurisdiction to review this ruling. *See* 28 U.S.C. § 1291.

Sabal Trail contends that we may exercise pendent appellate jurisdiction to review this ruling, but we disagree. We may exercise pendent jurisdiction over an otherwise unappealable issue only if the issue "is inextricably intertwined with or necessary to ensure meaningful review of [an] appealable issue." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018) (internal quotation marks omitted). The issue whether the landowners may recover their attorney's fees and costs from Sabal Trail does not fall under either category.

11

Only two appealable issues are before us: the admissibility of landowner opinion testimony and whether the jury instructions and arguments of counsel warrant a new trial. We have already held that the first issue is neither inextricably intertwined with nor necessary to ensure meaningful review of the recoverability of attorney's fees and costs. *3.921 Acres*, 947 F.3d at 1371–72. And as we explain, the second issue likewise supplies no basis to exercise pendent appellate jurisdiction.

If "we may resolve" an appealable issue "without reaching the merits" of the unappealable issue, then the latter issue does not fall within either category of pendent appellate jurisdiction. *Carbone*, 910 F.3d at 1357 (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999)). To resolve the appealable issue—whether the jury instructions and arguments of opposing counsel warrant a new trial—all we must decide is whether Sabal Trail suffered prejudice from the instructions or arguments. To answer that question, we need not pass upon the landowners' entitlement to attorney's fees, an issue that turns on whether federal or state law supplies the applicable rule of decision. So we lack pendent appellate jurisdiction to decide whether the landowners are entitled to attorney's fees and costs.

### III. CONCLUSION

We **AFFIRM** the judgments awarding compensation to the landowners. We

12

**DISMISS** the appeals of the ruling that Sabal Trail must pay the landowners'

attorney's fees and costs.