

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FLO & EDDIE, INC., a California
corporation, individually and on behalf of
all others similarly situated,

Plaintiff-Appellee,

v.

PANDORA MEDIA, LLC, a Delaware
corporation,

Defendant-Appellant.

No. 20-56134

D.C. No.
2:14-cv-07648-PSG-GJS

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted May 20, 2022
Pasadena, California

Before: LEE and BRESS, Circuit Judges, and FITZWATER,** District Judge.
Concurrence by Judge BRESS.

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Sidney A. Fitzwater, United States District Judge for the
Northern District of Texas, sitting by designation.

Defendant-Appellant Pandora Media, LLC ("Pandora") appeals the district court's order denying Pandora's renewed motion to strike under California's anti-SLAPP statute. We have jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine, *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1015 (9th Cir. 2013), and we affirm.

Plaintiff-Appellee Flo & Eddie, Inc. ("Flo & Eddie") is a corporation that is owned and controlled by two of the founding members of the well-known 1960s rock band "The Turtles." Flo & Eddie filed a series of lawsuits around the country in which it claimed that various defendants (here, Pandora) had failed to pay to reproduce, broadcast, and perform Flo & Eddie's pre-1972 music. In the instant case, which is still pending after more than seven years, Pandora filed a renewed motion seeking dismissal under California's anti-SLAPP statute, which the district court denied. We review the district court's decision de novo. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).

1. To succeed on its anti-SLAPP motion, Pandora must first demonstrate that Flo & Eddie's claims arise from Pandora's protected conduct. *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1065 (Cal. 2021). If Pandora meets this burden, Flo & Eddie must then show that its claims have "at least 'minimal merit.'" *Id.* (citation omitted). We conclude that Pandora has not met its initial burden.

2.     Pandora maintains that its conduct—broadcasting songs by The Turtles—is protected under Cal. Civ. Proc. Code § 425.16(e)(4), the "catch-all" provision of the anti-SLAPP statute.

To satisfy the "catch-all" provision, Pandora must show that its relevant conduct (the conduct from which Flo & Eddie's claims arise) was speech on an issue of public interest, and that its speech had a functionally close relationship to the public issue. *FilmOn.com Inc.v. DoubleVerify Inc*., 439 P.3d 1156, 1165 (Cal. 2019). As a part of this burden, Pandora must demonstrate that its speech furthered debate on the public issue. *Id.* at 1166 ("[A] statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue." (alteration in original) (citation omitted)).

Pandora has failed to demonstrate that its mere broadcasting of Flo & Eddie's music constitutes speech on an issue of public interest that has a functionally close relationship to the public issue and that furthers debate on the public issue. At most, Pandora has shown that it broadcasts songs performed by The Turtles, which in itself is insufficient. *See Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*, 130 Cal. Rptr. 2d 81, 91 (Cal. Ct. App. 2003) ("If publication were sufficient, anything the Union published would almost automatically become a matter of public interest."). In cases involving broadcasting where the court has found protected conduct, there

has been at least some furtherance of the debate or issue. *See Hall v. Time Warner, Inc.*, 63 Cal. Rptr. 3d 798, 805-06 (Cal. Ct. App. 2007) ("The defendants' television broadcast contributed to the public discussion of the issue by identifying Hall as a beneficiary and showing her on camera."); *Belen v. Ryan Seacrest Prods., LLC*, 280 Cal. Rptr. 3d 662, 672 (Cal. Ct. App. 2021) (holding that creation of TV show about the "experience of being a model" was of public interest and the TV show depicted the struggles of a model). No such furtherance of a debate or issue has been shown to have occurred here.

This case is distinguishable from those in which the publication of music was determined to be protected conduct. For example, in *Serova v. Sony Music Entertainment*, 257 Cal. Rptr. 3d 398 (Cal. Ct. App. 2020), the defendants were sued for marketing a Michael Jackson album. *Id.* at 402. The album cover represented that Jackson was the lead singer on all of the songs, despite a debate among fans over whether Jackson was actually the singer on three tracks. *Id.* at 402-03. The court held that the speech at issue—marketing an album that claimed that Jackson was a singer on three tracks—"stated a position on a disputed issue of public interest" and "helped shape the experience of the music that consumers purchased . . . . [Because] whether the singer was Michael Jackson mattered to consumers." *Id.* at 403, 414. The speech therefore furthered the debate on that issue and was protectable. *Id.* at 414-15.

- 4 -

The instant case is more like those in which speech *refers to*, but does not *further*, debate on a public issue. In *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc*., 107 Cal. Rptr. 3d 861 (Cal. Ct. App. 2010), which the Supreme Court of California cited in *FilmOn*, the defendant sought protection under the anti-SLAPP statute for claims targeting its use of an "organic" label. *Id.* at 865, 872-73. The court held that merely producing a label that said "organic" on it did not contribute to the debate on what it means for a product to be considered organic. *Id.* at 875 ("[The defendant] fail[s] to show how the application of an 'OASIS Organic' seal on a particular product helps to advance or foster a debate . . . [or] will in some fashion contribute to a broader debate on the meaning of the term 'organic.'").

3.      Although we do not reach the merits of Flo & Eddie's challenge because Pandora has not met its initial burden under the anti-SLAPP statute, Pandora forcefully argues that decisions post-dating the district court's decision foreclose Flo & Eddie's claims as a matter of law. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1177 (9th Cir. 2021) (holding that a public performance right does not exist under California law); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 849 F.3d 14, 16-17 (2d Cir. 2017) (per curiam) (holding that a public performance right does not exist and therefore that Flo & Eddie's copying claims fail because of fair use); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 229 So. 3d 305, 320 (Fla. 2017) (holding that Flo

& Eddie's copying claims fail because the ultimate use of the internal copies is permissible); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 709 F. App'x 661, 663 (11th Cir. 2018) (per curiam) (holding same and affirming summary judgment for Sirius XM).  Because this matter has been pending for more than seven years, we direct the district court to consider expedited motions practice on the legal validity of Flo & Eddie's claims in light of intervening precedent.

**AFFIRMED**.

FILED

JUN 2 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I join the Court's disposition but write separately to note my concern about our jurisdiction over this appeal. I agree we have jurisdiction here because our precedents say we do: our cases hold that the denial of a motion to strike under California's anti-SLAPP law is immediately appealable under the collateral order doctrine. *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1011 (9th Cir. 2013); *Batzel v. Smith*, 333 F.3d 1018, 1024–26 (9th Cir. 2003). But there is substantial reason to question this authority, as many of our colleagues already have.

The collateral order doctrine allows interlocutory appeals from orders that "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quotation omitted); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). "The Supreme Court has repeatedly emphasized that these requirements are stringent and that the collateral-order doctrine must remain a narrow exception." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 724 (9th Cir. 2017).

In *Makaeff v. Trump University, LLC*, Judge Watford, joined by then-Chief Judge Kozinski and Judges Paez and Bea, expressed the view that litigants should

not be entitled to immediate appeals of the denial of motions under California's anti-SLAPP statute. 736 F.3d 1180, 1190–92 (9th Cir. 2013) (Watford, J., dissenting from the denial of rehearing en banc). Judge Watford explained that the collateral order doctrine should not apply to such orders because "California's anti-SLAPP statute requires courts to assess the merits of the action when ruling on a motion to strike." *Id.* at 1190. He also observed that, even if *Batzel* correctly interpreted California's anti-SLAPP statute as conferring immunity from trial, under Supreme Court precedent that alone does not suffice for an interlocutory appeal. *Id.* at 1191 (citing *Johnson v. Jones*, 515 U.S. 304, 307 (1995)).

In *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, Judge Gould, joined by now-Chief Judge Murguia, also challenged our case law allowing interlocutory appeals of the denial of California anti-SLAPP motions. 890 F.3d 828 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018) (Gould, J., concurring). Judge Gould, who had previously joined the decision in *Batzel*, explained that he had "since receded from that opinion" because he believed "the interlocutory appeal of this issue is incorrect, potentially conflicts with federal procedural rules, and burdens the federal courts with unneeded interlocutory appeals." *Id.* at 835. Like Judge Watford, Judge Gould pointed out that the "denial of an anti-SLAPP motion is inextricably intertwined with the merits." *Id.* at 838.

Judge Gould also noted that our case law conflicts with the decisions of the Seventh, Tenth, and D.C. Circuits, which unlike our Circuit do not even treat state anti-SLAPP procedures as applicable in federal court. *Id.* at 836–37 (citing *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018); and *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015)). I note that since Judge Gould's separate writing in *Planned Parenthood*, the Eleventh Circuit can be added to that list as well. *See Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347 (11th Cir. 2018). And as Judge Gould pointed out, the Second Circuit has held that even assuming state anti-SLAPP procedures apply in federal court, interlocutory appeals from the denial of anti-SLAPP motions are not permitted. *Ernst v. Carrigan*, 814 F.3d 116, 119 & n.1 (2d Cir. 2016).

This case provides a healthy illustration of the concerns that my colleagues have raised about allowing these interlocutory appeals. Flo & Eddie filed this case over seven years ago. Twice, Pandora has filed an anti-SLAPP motion and then taken an interlocutory appeal when it was denied. We have weathered years of appellate proceedings and procedural wrangling at the appellate level. Two "pointless and costly detours" later, *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1184 (9th Cir. 2016) (Kozinski, J., concurring), this case is effectively

3

back where it started. It is true, of course, that the law has developed since Pandora first filed its anti-SLAPP motion. *See Flo & Eddie, Inc. v. Sirius XM*, 9 F.4th 1167, 1177 (9th Cir. 2021). But the common happenstance of ongoing developments in the law does not itself justify interlocutory appeals under the collateral order doctrine. *See Mohawk Indus.*, 558 U.S. at 108–09 ("We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.").

Like Judges Gould and Watford and the many other judges who joined their separate writings, I believe our case law allowing interlocutory appeals of the denial of anti-SLAPP motions warrants broader reexamination.