**Opinion issued April 7, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00401-CV

————————————

**RAHUL K. NATH, M.D. AND USHA NATH, Appellants**

**V.**

**BAYLOR COLLEGE OF MEDICINE AND TEXAS CHILDREN'S HOSPITAL, Appellees**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-85080**

---

## MEMORANDUM OPINION

Rahul K. Nath, M.D., and Usha Nath sued Texas Children's Hospital and Baylor College of Medicine. The Naths alleged that the two hospitals had interfered with their sale of real property, intending that property to satisfy a future

money judgment the hospitals anticipated receiving against Rahul Nath in a separate suit.

The hospitals filed dismissal motions under the Texas Citizens Participation Act and Rule 91a. The trial court granted both motions. The trial court later entered a final judgment awarding the hospitals hundreds of thousands of dollars in attorney's fees.

In six issues,[1] the Naths contend that (1) one of the two orders granting dismissal was the final judgment, making the other dismissal order and the later "final judgment" nullities, (2) dismissal under Rule 91a was in error, (3) the TCPA does not apply to all their claims, and they met their TCPA burden, regardless, (4) the trial court abused its discretion in its evidentiary rulings on the hospitals' attorney-fee claims, (5) the trial court erred in denying the Naths their right to a jury trial on the attorney-fee claims, and (6) the trial judge erred by ruling on a motion to recuse that the Naths say they never presented.

Because the trial court erred in evaluating a counter-affidavit by examining excerpted phrases and sentences in isolation without the context that explained the expert's opinions, we remand for further consideration of the affidavit, which then

---

[1] We have renumbered the issues to match our analytical approach. When we refer in the opinion to a certain, numbered issue, we refer to the issue as we have numbered them here.

2

requires a new determination of whether summary judgment on attorney's fees was appropriate.

## Background

To understand the claims, it is necessary to briefly recount the parties' past litigation.

### *The sanctions order that led to* Nath I *and* Nath II

In 2006, Rahul Nath sued Texas Children's Hospital and Baylor College of Medicine. *See Nath v. Tex. Child.'s Hosp.*, 446 S.W.3d 355 (Tex. 2014) (*Nath I*). The trial court granted summary judgment to the hospitals and sanctioned Nath personally for litigation abuse, obliging him to pay the hospitals' attorney's fees of $1.4 million. *Id.* at 361. The hospitals filed abstracts of judgment. Nath appealed the judgment.

The Texas Supreme Court held that the trial court had not abused its discretion in sanctioning Nath but that remand was necessary for the trial court to determine whether the hospitals bore some responsibility for the large amount of attorney's fees they incurred, such that Nath should not be responsible for the entire amount. *Id.* at 371–72 ("A defending party cannot arbitrarily shift the entirety of its costs on its adversary simply because it ultimately prevails on a motion for sanctions. Because the trial court did not discernibly examine [the

3

degree to which TCH and BCM's own behavior caused the expenses for which recovery is sought], we remand for it to do so.").

On remand, the trial court sanctioned Nath in the same amount. The hospitals filed abstracts of judgment on the second judgment. Nath appealed again.

In the second appeal, the hospitals argued that they did not have to establish the reasonableness of the attorney's fees because the fees were awarded as a sanction instead of a traditional fee-shifting. *Nath v. Tex. Child.'s Hosp.*, 576 S.W.3d 707, 710 (Tex. 2019) (per curiam) (*Nath II*). The Texas Supreme Court rejected their argument and reversed the second sanction order, holding that the affidavits submitted by the hospitals in support of their attorney's fee awards were conclusory and did not show the reasonableness of either the hourly rate or the hours worked. *Id.* The Court remanded a second time for the trial court to determine a sanction amount that complied with *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), which clarified the evidentiary standards for shifting attorney's fees. *Id.*

Two months after *Nath II*, the hospitals filed notices of withdrawal of their abstracts of judgment, but both notices included language warning that the hospitals anticipated filing replacement abstracts soon. Rahul Nath contended that the releases' language was clouding title to his real property, and he demanded that the phrasing be replaced with unequivocal language of release. Nath noted that

neither hospital had an enforceable judgment against him to support the filing of any abstract of judgment.

According to their pleadings, the Naths had a buyer ready to purchase a non-homestead piece of real property in the Houston area. They assert that the buyer backed out because of the cloud on their title caused by the equivocal language in the abstract withdrawal.

The hospitals contend that the Naths have mischaracterized the status of the sale transaction and linked no damages to their abstract filings.

***This litigation***

After the potential buyer backed out, the Naths sued the hospitals for interfering with the sale of their property. Their November 2019 petition asserted claims for tortious interference with a contract and conspiracy. Soon after, the hospitals filed a joint Rule 91a motion to dismiss all claims as having no basis in law or fact and being barred by the affirmative defenses of judicial proceedings privilege and justification. The joint Rule 91a motion sought attorney's fees. On the same day, the hospitals jointly moved to dismiss pursuant to the Texas Citizens Participation Act, again seeking attorney's fees.

The trial court entered two orders on May 20, 2020, one minute apart. One order granted the joint Rule 91a motion to dismiss. That order contained the following language: "The Court orders that all of the claims alleged by Plaintiffs

[ ] are hereby DISMISSED WITH PREJUDICE." As for the request for attorney's fees, the order stated: "The Court finds that the Defendants['] request for costs and reasonable attorneys' fees under [Rule] 91a.7 should be GRANTED. The Court will consider evidence as to the reasonableness of such fees and costs."

The other order granted the hospitals' joint TCPA motion to dismiss. The order contained the following language: "The Court finds that the Motion should be GRANTED in all things. The court therefore orders that all of the claims alleged by [the Naths] are hereby DISMISSED WITH PREJUDICE." As for the request for attorney's fees, the order stated: "The Court further finds that Defendants [ ] are entitled to the costs and reasonable attorneys' fees they incurred in defending against this legal action. The Court will consider evidence as to the reasonableness of such fees and costs."

The Naths filed a notice of appeal. The hospitals immediately filed a motion in this Court to dismiss the Naths' appeal for lack of jurisdiction, arguing that the two dismissal orders were interlocutory. They also filed a motion in the trial court, moving for summary judgment on their yet-unresolved attorney-fee claims.

The Naths' argued that one of the two orders entered on May 20 was a final, appealable judgment, the trial court lost plenary power 30 days after that judgment, and the hospitals' joint motion for summary judgment on attorney's fees filed on June 30 was presented too late to permit an attorney-fee award. The Naths objected

6

to the hospitals' summary-judgment motion and filed two counter affidavits: one from former Justice of the Supreme Court of Texas, Craig Enoch; the other from local attorney, A.G. Crouch. The Naths contended that, at a minimum, these two affidavits raised issues of fact to prevent an award of attorney's fees through summary judgment, if plenary power existed to award attorney's fees.

The trial court rejected the Naths' argument that it had lost plenary power, overruled their objections to the hospitals' evidence, sustained the hospitals' objections to the Naths' counter-affidavits, and entered a final judgment awarding more than $1.2 million in attorney's fees to the hospitals.[2]

A short time later, this Court denied the hospitals' motion to dismiss the Naths' appeal for lack of jurisdiction.

We now consider the merits of the appeal.

**Identifying the Final Judgment**

The Naths' first issue hinges on a determination of which trial court ruling was the final judgment. We start there.

In *Lehmann v. Har-Con Corp.*, the Texas Supreme Court held that "a judgment issued without a conventional trial is final for purposes of appeal if and only if either [1] it actually disposes of all claims and parties then before the court, regardless of its language, or [2] it states with unmistakable clarity that it is a final

---

[2] This fee award is separate from the sanction fee award that was the subject of *Nath I* and *Nath II*. Combined, the fee awards total over $2 million.

judgment as to all claims and all parties." 39 S.W.3d 191, 192–93 (Tex. 2001). As for the second option, the Court clarified that "the language of an order or judgment *can* make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties." *Id.* at 200; *Farm Bureau Cnty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015).

Neither the Rule 91a dismissal order nor the TCPA dismissal order disposed of all parties and all claims: the hospitals' attorney-fee claims remained pending. *See McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (per curiam) (unresolved attorney-fee claim prevented summary-judgment order from being final judgment). Similarly, neither order contained language reflecting it disposed of all parties and claims. Both orders contemplated future fee awards and left unresolved the amount of fees to be awarded. Thus, neither order operated as a final judgment. *Farm Bureau*, 455 S.W.3d at 163. The trial court's plenary power continued. *See* TEX. R. CIV. P. 329b(d).

The Naths filed a notice of appeal after these two interlocutory orders issued. Their notice of appeal was premature. TEX. R. APP. P. 27.1. Only when the trial court granted summary judgment on the attorney-fee issue—more than a month later—did the trial court enter a final, appealable judgment that disposed of all parties and all claims. The Naths' notice of appeal was considered filed on the day of that final judgment: August 17, 2020. *Id.* (providing that premature notice of

8

appeal is effective and considered filed on day of—but after—event that begins period for perfecting appeal).

With a final judgment in place, this Court denied the hospitals' earlier-filed motion to dismiss the Naths' appeal.

To recap, the May 20 dismissal orders were interlocutory because they held that the hospitals were entitled to attorney's fees but left unresolved the amount of those fees. It was only when the judgment awarding attorney's fees was entered on August 17 that a final judgment existed to allow appellate jurisdiction. The Naths' premature notice of appeal was considered filed that day. With a final judgment in place, this Court now has appellate jurisdiction to review the final judgment and any interlocutory orders subsumed in it.

We overrule the Naths' first issue.

## Rule 91a dismissal

In their second issue, the Naths contend that the trial court erred in dismissing their claims under Rule 91a because those claims have a basis in law and fact.

### A. Standard of review

We review the merits of a Rule 91a dismissal de novo. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020).

**B.    The hospitals' contention that the Rule 91a dismissal order "must" be affirmed due to waiver**

In their joint brief, the hospitals assert that the Naths failed to respond to all grounds supporting Rule 91a dismissal, thereby compelling us to affirm the dismissal without considering the merits of any appellate argument. They argue that the Naths' appellate brief failed to counter their arguments for dismissal based on judicial-proceedings privilege, justification, and collateral attack.

The hospitals' assertion is not well taken. In footnote four on page 39 of the Naths' appellate brief, the Naths explicitly incorporate their arguments on these three matters into the section of their brief appealing the Rule 91a dismissal. We reject the hospitals' contention that any waiver has occurred or that we must affirm dismissal of all claims without reaching the merits of any. We next consider whether the trial court erred in granting the Rule 91a dismissal.

**C.    Rule 91a in the context of an asserted affirmative defense**

Rule 91a permits a party to move to dismiss a cause of action for lacking a basis in law or fact. TEX. R. CIV. P. 91a.1. A cause of action has no basis in law "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* A cause of action has no basis in fact "if no reasonable person could believe the facts pleaded." *Id.* Believability is analyzed as a legal-sufficiency review. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016).

10

In ruling on a Rule 91a motion, a court "may not consider evidence . . . and must decide the motion based solely on the pleading of the cause of action." TEX. R. CIV. P. 91a.6. This works as a limitation on the court's factual inquiry when deciding if a claim has a basis in fact, but it does not likewise limit the court's legal inquiry when deciding if a claim has a basis in law. *Bethel*, 595 S.W.3d at 655. A trial court deciding whether a claim has a "basis in law" may also consider the defendant's pleadings to determine whether a pled affirmative defense applies to the plaintiff's pled facts to deprive the plaintiff's claim of any legal basis. *Id.*

Claims are subject to dismissal for having no basis in law when the plaintiff's allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the plaintiff to the relief sought because a pled affirmative defense applies. *Bethel*, 595 S.W.3d at 656. Some affirmative defenses cannot be established by relying only on the plaintiff's pled facts and the defendant's pled affirmative defense. When outside evidence is necessary to evaluate the applicability of the affirmative defense, dismissal under Rule 91a is improper. *Id.*

**D.  The Naths' claims have no basis in law due to the hospitals' pled affirmative defense of judicial-proceedings privilege**

As traditionally understood, the judicial-proceedings privilege prohibits communications during a judicial proceeding from serving as the basis of a civil action for libel or slander. *Landry's Inc. v. Animal Legal Def. Fund*, 631 S.W.3d

11

40, 46 (Tex. 2021) (citing *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982) (per curiam)). The privilege covers communications made with negligence and even malice. *Id.* The privilege functionally immunizes against any claim "that contains allegations of reputational harm from a communication in a judicial proceeding." *Rossa v. Mahaffey*, 594 S.W.3d 618, 628 (Tex. App.—Eastland 2019, no pet.); *see Wilkinson v. USAA Fed. Sav. Bank Tr. Servs.*, No. 14-13-00111-CV, 2014 WL 3002400, at *6 (Tex. App.—Houston [14th Dist.] July 1, 2014, pet. denied) (mem. op.) ("The judicial proceedings privilege is 'tantamount to immunity'; where there is an absolute privilege, no civil action in damages for oral or written communications will lie, 'even though the language is false and uttered or published with express malice.'") (quoting *Hernandez v. Hayes*, 931 S.W.2d 648, 650 (Tex. App.—San Antonio 1996, writ denied).

The immunity extends beyond libel and slander suits to cover other torts, like business-disparagement and tortious-interference claims, when those claims are based on an allegedly defamatory communication in a judicial proceeding. *Howard v. Matterhorn Energy, LLC*, 628 S.W.3d 319, 333–34 (Tex. App.—Texarkana 2021, no pet.). Court have even extended the privilege to cover the filing of a lis pendens[3] to announce that a claim on real property is being litigated.

---

[3] The lis pendens statute, found in Chapter 12 of the Property Code, gives litigants a method to constructively notify anyone taking an interest in real property that a claim is being litigated against the property. *In re Collins*, 172 S.W.3d 287, 292

12

*Bayou Terrace Inv. Corp. v. Lyles*, 881 S.W.2d 810, 818 (Tex. App.—Houston [1st Dist.] 1994, no writ). Thus, for example, when a party asserts claims for tortious interference with contract and business disparagement based on the filing of a lis pendens that caused a property sale to fall through, the judicial proceedings privilege bars the claims. *Howard*, 628 S.W.3d at 333–34 (involving counterclaims).

The Naths and the hospitals agree that the judicial-proceedings privilege covers claims based on the filing of a lis pendens. They diverge on whether the privilege extends to the filing of an abstract of judgment. No party has located a Texas case that resolves the question. We did not find one either.

The Naths focus their argument on the alleged wrongful nature of the hospitals' filings and cite in support the dissenting opinion in *Prappas v. Meyerland Cmty. Improvement Ass'n*, 795 S.W.2d 794, 800 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (Brown, C.J., dissenting). In *Prappas*, the majority

(Tex. App.—Fort Worth 2005, orig. proceeding). A notice of lis pendens may be filed during the pendency of a suit involving (1) title to real property, (2) the establishment of an interest in real property, or (3) the enforcement of an encumbrance against real property. TEX. PROP. CODE § 12.007(a). The purpose of a lis pendens is twofold: (1) to protect the filing party's alleged rights to the property in dispute in the lawsuit and (2) to put those interested in the property on notice of the lawsuit. *See David Powers Homes, Inc. v. M.L. Rendleman Co., Inc.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also* TEX. PROP. CODE § 13.004; *In re Collins*, 172 S.W.3d at 293 & n.14. A lis pendens does not prevent a subsequent sale; it merely puts the purchaser on notice of the land's status. *See Collins v. Tex. Mall, L.P.*, 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.).

13

held that the judicial-proceedings privilege extends to the filing of a lis pendens even if it was filed maliciously: "the nature of an absolute privilege" is that it "does not turn on the presence or absence of good faith," so the presence of malice is immaterial. *Id.* at 797, 799. In his dissent, Chief Justice Brown argued that the deliberate filing of a wrongful instrument should not receive absolute protection, but his view did not carry the day. *Id.* at 800 (Brown, C.J., dissenting).

If a maliciously filed lis pendens is protected by an absolute privilege, as the *Prappas* court held, then we fail to see why the alleged wrongful character of an abstract of judgment would limit the privilege that applies to that instrument, as the Naths would have us hold. Whether the judicial-proceedings privilege applies to abstracts of judgment must be resolved by evaluating the type of instrument at hand, not the alleged wrongful nature of its filing. *See id.* at 797, 799.

The hospitals argue that judicial protections over the filing of a lis pendens naturally extend to the filing of an abstract of judgment because an abstract of judgment "is conduct during or related to litigation, the very type of conduct to which the privilege was meant to attach."

There are a handful of cases that discuss the judicial-proceedings privilege's shield over those who file lis pendens and how it protects them from suits for damages. Those opinions justify the extension of the privilege, at least in part, by pointing out that there are statutory remedies available to people against whom

14

wrongful lis pendens have been filed. *Howard*, 628 S.W.3d at 334 n.7 (stating that privilege does not preclude statutory remedies); *Lyles*, 881 S.W.2d at 818 (applying judicial-proceedings privilege against appellants while noting that there are "other avenues of relief if, as they claim, the lis pendens was wrongfully filed."); *see Campbell v. Martell*, No. 05-19-01413-CV, 2021 WL 1731754, at *11 (Tex. App.—Dallas May 3, 2021, no pet.) (mem. op.);[4] *see also* TEX. PROP. CODE § 12.008 (mechanism to cancel a lis pendens); TEX. CIV. PRAC. & REM. CODE § 12.002 (providing remedy when person makes, presents, or uses a document with, among other requirements, knowledge that document is fraudulent court record or fraudulent lien or claim).

An abstract of judgment, likewise, is a part of a judicial proceeding in that it is a necessary step to convert a money judgment into a judicial lien that may later be executed against real property to satisfy a judgment. TEX. PROP. CODE § 52.001

---

[4]     *But see County Inv., LP v. Royal W. Inv., LLC*, 513 S.W.3d 575, 579–81 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (applying judicial-proceedings privilege to bar a statutory fraudulent-lien claim under Section 12.002 of the Texas Civil Practice and Remedies Code that is based on a wrongful lis pendens). The Dallas Court of Appeals later rejected the reasoning in *County Investments* and held that the privilege against tort damages for wrongful lis pendens does not also insulate against statutory claims for fraudulent liens or the recovery of statutorily provided damages. *See Campbell v. Martell*, No. 05-19-01413-CV, 2021 WL 1731754, at *11 (Tex. App.—Dallas May 3, 2021, no pet.) (mem. op.). This Court has also recognized that a "lis pendens may form the basis of a fraudulent lien claim" under Section 12.002 of the Civil Practice and Remedies Code. *James v. Calkins*, 446 S.W.3d 135, 150 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), *abrogated on other grounds*, *Montelongo v. Abrea*, 622 S.W.3d 290 (Tex. 2021).

(properly recorded and indexed abstract of judgment creates lien on judgment debtor's non-exempt real property in county); *cf. Porterfield v. Deutsche Bank Nat'l Trust Co.*, No. 04-20-00151-CV, 2021 WL 4976560, at *5 (Tex. App.—San Antonio October 27, 2021, pet. filed) (mem. op. on reh'g) (discussing abstracts of judgment).

Further, the wrongful filing of an abstract of judgment—like a lis pendens—may lead to a statutory-remedy claim. *See MFG Fin., Inc. v. Hamlin*, No. 03-19-00716-CV, 2021 WL 2231256, at *5 (Tex. App.—Austin June 3, 2021, pet. denied) (mem. op.) (involving Chapter 12 claim based on allegedly fraudulent abstract of judgment); *see also* TEX. CIV. PRAC. & REM. CODE § 12.002(b). Under Section 12.002, a person who files a fraudulent abstract of judgment may be liable for the greater of $10,000 or actual damages, plus court costs, reasonable attorney's fees, and even exemplary damages. TEX. CIV. PRAC. & REM. CODE § 12.002(b).

In their live petition, the Naths allege that they own a vacant lot in West University Place and that the hospitals filed abstracts of judgment in the Harris County real property records, which attached to their lot. They assert that the hospitals needed to unequivocally withdraw their abstracts when the Texas Supreme Court reversed the trial court's sanction award after *Nath I* and again after *Nath II* but that the hospitals, instead, filed purported withdrawals that publicly

16

announced the hospitals "anticipated that a new abstract of judgment shall issue forthwith upon remand of the case to reassess the amount of sanctions to be awarded to and entry of judgment for [the hospitals], whereupon the new abstract of judgment shall be filed."

The Naths contend that the title company discovered the abstracts, allegedly causing the buyer to back out of purchasing the Naths' property for over $2 million. On these facts, they sued the hospitals for tortious interference with the land sale contract, asserting that the hospitals "knew or had reason to know of the pending sale, and willfully and intentionally interfered with the sale by refusing to unequivocally withdraw the abstracts." They also asserted a claim for conspiracy and violation of 42 U.S.C. § 1983, arguing that the hospitals conspired with the trial court judge to "interfere or prevent the sale of the West University property and then later divide it between themselves."

All the Naths' dismissed claims were based on the filing of abstracts of judgment and the equivocal withdrawal of those abstracts. The hospitals answered with the affirmative defenses of privilege and immunity. Because the judicial-proceedings privilege protects against tort claims[5] arising out of the filing of an

_____

[5] The judicial-proceedings privilege applies to Section 1983 claims, as it does to other torts. *See Fisher v. Lint*, 868 N.E.2d 161, 170 (Mass. App. Ct. 2007) (affirming dismissal of 1983 claim because officer's statements that formed the basis of the claim against him were protected by the absolute judicial-proceeding privilege); *see also Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) (stating that

17

abstract of judgment, the trial court did not err in granting a Rule 91a dismissal of the Naths' claims.

We overrule the Naths' second issue.

**TCPA**

The Naths' third issue addresses dismissal under the TCPA. First, they argue that the TCPA does not apply to federal Section 1983 claims. Second, they argue that they presented a prima facie case for each cause of action, including their Section 1983 claim.

**A.     The TCPA**

The TCPA is found in Chapter 27 of the Civil Practice and Remedies Code, which is titled, "Actions involving the Exercise of Certain Constitutional Rights." TEX. CIV. PRAC. & REM. CODE § 27.001–.011. The TCPA is "sometimes referred to as an anti-SLAPP law—the acronym standing for strategic lawsuit against public participation." *KTMB Operating Co. v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016). Its stated purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in

Section 1983—which  provides that every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages—is "a species of tort liability"); *id.* at 417–18 (holding that absolute prosecutorial immunity applies to 1983 claims and, in doing so, noting other avenues to hold prosecutors responsible for misconduct); *cf. Correllas v. Viveiros*, 572 N.E.2d 7, 13 (Mass. 1991) (absolute privilege from defamation claim based on testimony at criminal trial "would be of little value if the individual were subject to liability under a different theory").

18

government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (purpose of TCPA is to protect "citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them").

The TCPA serves its purpose by creating a "set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal [and] cost-shifting," as well as possible sanctions. *Serafine v. Blunt*, 466 S.W.3d 352, 369 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring); *see, generally*, TEX. CIV. PRAC. & REM. CODE § 27.003–.009; *see also id.* § 27.009(a)(1–2) (as amended, statute makes the award of "court costs and reasonable attorney's fees" mandatory and the award of sanctions discretionary).

This statute has been relied on by parties to obtain dismissal of all kinds of claims, from a tortious-interference claim by homeowners against their HOA's attorney, *Schimmel v. McGregor*, 438 S.W.3d 847 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), to the filing of a lis pendens that clouds title to property, *James*, 446 S.W.3d at 139.

19

Here, the hospitals invoked the TCPA to obtain dismissal of the Naths' claims against them, including the Naths' Section 1983 claim.

## B.    Preemption

The Naths argue that federal law preempts state-court TCPA dismissal of a federal Section 1983 claim brought in state court. The parties agree that no Texas case has decided this issue. The hospitals point us to a California decision, holding that California's anti-SLAPP statute may be used to dismiss a Section 1983 claim brought in state court. *See Gonzales v. Butts*, No. B143428, 2001 WL 1338409 (Cal. App. 2d Dist. Oct. 31, 2001) (unpublished) (holding that California anti-SLAPP statute is procedural—i.e., not substantive—and its application does not conflict with the purpose or effect of the federal statute to require preemption).

We have found others. A second California case holds similarly, *Patel v. Chavez*, 48 Cal. App. 5th 484 (Cal. App. 5th Dist. 2020). And a Nevada Supreme Court decision does as well, *John v. Douglas Cty. Sch. Dist.*, 219 P.3d 1276 (Nev. 2009) (holding that Nevada's anti-SLAPP statute is procedural, neutral in application, and does not offend federal rights or frustrate congressionally created substantive rights). But we also found an Oklahoma intermediate-court case holding the opposite as to that state's anti-SLAPP statute. *See Thacker v. Walton*, 499 P.3d 1255, 1263 (Ok. Ct. Civ. App. 3d Div. 2020). There, the Oklahoma court

held that its anti-SLAPP statute's dismissal procedures do substantively affect the federal law and are thus preempted by federal law. *Id.* at 1263.

The Oklahoma court quoted from the Fifth Circuit's explanation of its earlier decision not to apply the Texas TCPA in federal courts: "Because the TCPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court." *Id.* at 1263 n.13 (quoting *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019)).

In our view, the Fifth Circuit's decision to not apply the TCPA in federal court does not determine whether a state court can apply the TCPA to a federal claim being presented in that state court. The analysis that applies to these two issues is distinct.

As explained by the Fifth Circuit, when a case is in federal court, the "*Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases . . . but state procedural law yields to the applicable Federal Rules." *Klocke*, 936 F.3d at 244. While it can be difficult to determine whether a state law is procedural or substantive, according to the Fifth Circuit, a "federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or

21

rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Id.* (quoting *Abbas v. Foreign Policy Grp. LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015)).

According to the Fifth Circuit, the TCPA dismissal statute "answers the same question" as Federal Rules of Civil Procedure 12 and 56, namely, "what are the circumstances under which a court must dismiss a case before trial?" But the TCPA "imposes additional requirements beyond those found in Rules 12 and 56" to answer that question. *Id.* at 245. It does so by "demand[ing] judicial weighing of evidence" to determine whether a plaintiff can meet each element of his claim. *Id.* The "Federal Rules in question are 'sufficiently broad to control the issue before the [federal] court'" and already supply a "comprehensive framework governing pretrial dismissal and judgment." *Id.* at 247 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1351, 1355 (11th Cir. 2018)).

Because the case analyzed by the Fifth Circuit was in federal court under diversity jurisdiction, federal procedural rules were supposed to apply, and the federal rules answered the same question that the state law addressed, the Fifth Circuit determined that federal courts should use federal dismissal procedures instead of state dismissal procedures. *See id.* With that in mind, we turn to this state-court case.

Whether a Texas statute is unavailable in Texas courts to dispose of a federal claim presents a very different question than the Fifth Circuit confronted. The

matter is not resolved by asking whether state and federal rules answer the same question. The question, instead, is whether the state law is procedural or substantive, or, more to the point, whether applying the state law would frustrate the federal law such that enforcement of the state law will frequently and predictably produce different outcomes based only on whether the claim is brought in state or federal court. *See Felder v. Casey*, 487 U.S. 131, 138 (1988); *Rogers v. Bagley*, 623 S.W.3d 343, 353 (Tex. 2021).

The *Felder* case involved a Wisconsin statute that required written notice of a claim against a state governmental subdivision, agency, or officer to be given to the government within 120 days of the alleged injury. 487 U.S. at 136. The claimant also had to submit an itemized statement of relief sought. *Id.* at 136–37. The governmental subdivision, agency, or officer had 120 days to grant or deny the relief requested. *Id.* at 137. If the claim was denied, the claimant had only six months to bring suit. *Id.* The United States Supreme Court held that the state law was preempted because it undermined the "uniquely federal remedy" available under Section 1983. *Id.* at 141. The Wisconsin statute placed a hurdle to recovery that was not a neutral or uniform procedural rule but a substantive burden on those who sought redress from misuse of governmental authority. *Id.* The burdens the Wisconsin law placed on federal Section 1983 claims were inconsistent with the federal statute and thus preempted by it. *Id.*

23

The Texas Supreme Court reached the opposite result in *Bagley*. There, the question was whether Section 1983 claims against a state mental health facility and its employees arising from a death were health care liability claims under the Texas Medical Liability Act and, if so, whether Section 1983 preempted the TMLA's requirement to timely serve an expert report. *Bagley*, 623 S.W.3d at 347. After determining that the claims were health care liability claims, the Court turned to preemption. *Id.* at 353. It held that the TMLA expert-report requirement was not preempted because the statute "merely requires an advance summary of the same evidence Bagley would have to present to prevail at trial, regardless of whether he sued in federal or state court." *Id.* at 355 (analogizing to Chapter 90 expert-report requirements for claimants alleging silica-related injuries, which were held to be procedural and not preempted in *In re GlobalSanteFe Corp.*, 275 S.W.3d 477 (Tex. 2008)).

The TMLA did not create another substantive hurdle or conflict or interfere with federal law; it only affected the timing of when proof must be disclosed, according to the Court. *Id.* Nor did the statute target claims against the government. It applied equally to nongovernment defendants. *Id.* That a Section 1983 claim might be dismissed under the TMLA did not make the two laws inconsistent. *Id.* The Court's focus was broader: "whether the state statute would 'frequently and predictably produce different outcomes in § 1983 litigation based

24

solely on whether the claim is asserted in state or federal court.'" *Id.* (quoting *Felder*, 487 U.S. at 138). Because the expert-report requirement would not, according to the Texas Supreme Court, it was not preempted. *Id.* at 356.

In our view, the TCPA procedures that require a claimant to make a prima facie showing on their claims early in the litigation are more like the requirements in *Bagley* and *GlobalSanteFe* than the one in *Felder*. To be sure, a claimant must point to clear and specific evidence that establishes a prima facie[6] case for each essential element of their claim much sooner in a state court where a TCPA dismissal motion is filed than the claimant would have to in federal court without a TCPA dismissal procedure. But the statute does not add to the proof that the claimant ultimately must establish. *See Bagley*, 623 S.W.3d at 354 (TMLA expert-report requirement does not require anything different from plaintiffs than would have been required in federal court, it only requires the information be established sooner in the litigation).

As stated, the ultimate question for preemption is whether applying the state law would hinder the federal law such that enforcement of the state law will "frequently and predictably" produce different outcomes based only on whether the claim is brought in state or federal court. *See Felder*, 487 U.S. at 138; *Bagley*,

---

[6]     Prima facie means "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." *Keeton v. Tex. Racing Com'n*, No. 03-03-00049-CV, 2003 WL 21939996, at *8 (Tex. App.—Austin Aug. 14, 2003, pet. denied) (quoting *Black's Law Dictionary* 1209 (7th ed. 1999)).

623 S.W.3d at 353. The Naths do not address this question in their brief. The hospitals offer that applying the TCPA will not regularly produce different results for Section 1983 claims brought in state court versus federal court. They point out that the TCPA's prima-facie-showing burden simply accelerates the timeframe in which the claimant must produce evidence in support of the elements of their claim without adding to that burden, and they note that the TCPA has a procedure for nonmovants to request discovery to respond to a TCPA motion and meet that burden, when needed. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(b).

We agree and conclude that the TCPA's prima-facie-showing requirement is not preempted by Section 1983. The Naths' Section 1983 claim is subject to the same TCPA summary-dismissal procedures as their other claims. We evaluate these claims next.

## C. The TCPA burden-shifting procedures

The TCPA involves shifting burdens. The movant has the initial burden to show by a preponderance of the evidence that the nonmovant has asserted a "legal action" that is adequately connected to the movant's exercise of the right of free speech, right to petition, or right of association. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). Neither party disputes that the hospitals met this burden.

When the movant meets their burden, the burden shifts to the nonmovant. The nonmovant has the burden to establish by clear and specific evidence a prima

facie case for each essential element of the claim. *Id.* § 27.005(c). "Clear and specific" has been described as evidence that is "unaided by presumptions, inferences, or intendments." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (quoting *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)). Conclusory statements and bare, baseless opinions are not probative and do not meet the requirement of clear and specific evidence of a prima-facie case. *Lipsky*, 460 S.W.3d at 592–93.

Dismissal may be required, despite the nonmovant's evidence proffered to meet their burden, if the movant establishes a defense. TEX. CIV. PRAC. & REM. CODE § 27.005(d). Because meeting the burden of establishing a defense prevails over the nonmovant makings their showing, it is permissible to begin with analyzing whether a valid defense is established. *See Berry v. Bay, Ltd.*, No. 13-18-00438-CV, 2020 WL 486486, at *3 (Tex. App.—Corpus Christi Jan. 30, 2020, no pet.) (mem. op.).

The trial court considers the pleadings and any supporting and opposing affidavits to evaluate whether each party has met its burden. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Lipsky*, 460 S.W.3d at 587. The trial court also "may allow specified and limited discovery relevant to the motion" to dismiss. TEX. CIV. PRAC. & REM. CODE § 27.006(b); *see In re SSCP Mgmt., Inc.*, 573 S.W.3d 464,

472–73 (Tex. App.—Fort Worth 2019, orig. proceeding) (acknowledging that "some merits-based discovery" may be necessary for nonmovant to respond to TCPA dismissal motion). A trial court considers the pleadings and evidence in the light most favorable to the nonmovant. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

We review de novo a trial court's ruling on a TCPA motion to dismiss. *John Moore Servs.*, 441 S.W.3d at 353.

**D.     The judicial-proceeding privilege negates all the Naths' claims**

The Naths asserted claims for violation of Section 1983 protections, for tortious interference with existing contract, and for tortious interference with prospective contracts.

As discussed above while affirming the trial court's grant of Rule 91a dismissal of the Naths' claims, the judicial-proceedings privilege is an absolute privilege against tort liability arising out of the filing of an abstract of judgment, including a claim brought under Section 1983. *See Fisher*, 868 N.E.2d at 167–68. All the Naths' claims arise out of the hospitals' filing of abstracts of judgment and equivocally withdrawing those abstracts. Thus, the trial court did not err in granting the hospitals' TCPA motion to dismiss.

28

We overrule the Naths' third issue. We turn now to their fourth issue, challenging the summary-judgment award of attorney's fees in the August 2020 final judgment.

**Evidentiary Rulings and Summary Judgment on Fee Award**

In their fourth issue, the Naths challenge the trial court's evidentiary rulings related to the hospitals' requests for attorney's fees that led to summary judgment for the hospitals. The Naths argue that the trial court erred in sustaining the hospitals' evidentiary objections to their counter-affidavits and that they presented sufficient evidence to raise a fact issue on the reasonableness of the hospitals' fee awards.

The hospitals respond that (1) the trial court properly granted their objections to the Naths' counter-affidavits as being conclusory and containing impermissible legal conclusions and (2) that properly excluding the counter-affidavits' challenged content left the question of the reasonableness of their fee claim conclusively decided in their favor.

A. **Standards of review**

We apply an abuse-of-discretion standard when determining whether a trial court erred in an evidentiary ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Harris Cnty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The admission or exclusion of

29

evidence is within the trial court's discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion when it rules without regard to any guiding rule or principle. *Malone*, 972 S.W.2d at 43. We uphold the trial court's ruling if there is any legitimate basis for it. *Id.*

We review de novo a trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A party moving for traditional summary judgment has the burden to prove there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015).

To determine whether there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 823.

"A reasonable attorney's fee is one that is not excessive or extreme, but rather moderate or fair." *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) (internal quotation

30

marks removed)). The determination of a reasonable fee rests within the trial court's discretion. *Id.* Thus, we review the trial court's order on attorney's fees for an abuse of discretion. *See, e.g.*, *Avila v. Larrea*, 506 S.W.3d 490, 494 (Tex. App.—Dallas 2015, pet. denied).

In reviewing an appellate attorney's fee award, we consider the record and may draw on our knowledge as appellate justices and attorneys. *Urquhart v. Calkins*, No. 01-17-00256-CV, 2018 WL 3352919, at *4 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. denied) (mem. op.); *see Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (appellate court has authority in looking at entire record to draw on common knowledge of justices and their legal experience).

## B.    Law on reasonableness of attorney's fees

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). "Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id.* The factfinder's starting point for calculating an attorney's fee award is determining the reasonable hours worked multiplied by a reasonable

hourly rate, following the lodestar analysis. *Id.* at 498 (discussing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

Sufficient evidence includes evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498 (citing *El Apple*, 370 S.W.3d at 762–63). "This base lodestar figure should approximate the reasonable value of legal services provided in prosecuting or defending the prevailing party's claim through the litigation process." *Id.*; *cf. Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (explaining that a fee-shifting statute "contemplates reasonable compensation . . . for the time and effort expended by the attorney for the prevailing [party], no more and no less").

This base lodestar calculation usually includes at least these considerations from *Arthur Andersen*: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, (4) the fee customarily charged in the locality for similar legal services, (5) the amount involved, (6) the experience, reputation, and ability of the lawyer or lawyers performing the services, (7) whether the fee is fixed or contingent on results, (8) the uncertainty of collection before the legal services have been rendered, and (9) the results obtained. *Rohrmoos*, 578 S.W.3d at 500

32

(citing *Arthur Andersen & Co. v. Perry Equipm't Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

"Reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney." *Rohrmoos*, 578 S.W.3d at 498; *see Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546, 565 (1986) (explaining that fee-shifting statutes are not "intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client").

There is a strong presumption that the base lodestar amount is reasonable, but that presumption can be overcome. *Rohrmoos*, 578 S.W.3d at 502 (citing *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553–54 (2010)). That is where the second step of the lodestar method comes in. *See id.*

In the second step, the factfinder must determine whether evidence of other considerations overcomes the presumption and requires an adjustment to reach a reasonable fee. *Id.* at 501. *Arthur Andersen* lists considerations that may justify an adjustment, but any factor already incorporated into the base calculation—at step one—does not apply in step two to rebut the presumption that the base calculation reflects a reasonable and necessary fee. *Id.* (citing *Arthur Andersen*, 945 S.W.2d at 818).

When fee shifting is authorized, the party seeking the fee award must prove that the requested attorney's fees are reasonable and necessary. *Id.* at 484. General, conclusory testimony lacking any real substance will not support a fee award. *Id.* at 501. Sufficient evidence is required, and the proponent for the award has the burden to provide it. *Id.* at 502.

Sufficient evidence includes, at a minimum, evidence of (1) the particular services performed, (2) who performed those services, (3) around when the services were performed, (4) the reasonable amount of time required to perform the services (which might not equal the actual amount of time expended), and (5) the reasonable hourly rate for each person performing such services. *Id.*; *see El Apple*, 370 S.W.3d at 762–63.

## C. The "conclusiveness" argument

The hospitals argue that "a declaration that provides sufficient evidence to conduct a lodestar analysis conclusively establishes the amount of a party's reasonable and necessary fees," citing *Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015 WL 9242048, at \*4 (Tex. App —Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.).

They are incorrect for two reasons. First, *Felix* does not contain such a holding. Instead, it holds that the movant's affidavits were insufficient, leaving this Court unable to "meaningfully review the fee request." *Id.* There is no implication

that a different affidavit would have conclusively established a fee amount that would bind the trial court to conclude that the fee request was reasonable and necessary.

Second, their argument ignores the second step of the lodestar analysis. Even after the claimant produces evidence to establish a presumptively reasonable "base" fee amount, the opposing party may present evidence related to different considerations to argue for a reduction of the fee award. *See Rohrmoos*, 578 S.W.3d at 501. Likewise, the trial court may consider other compelling factors to reduce the requested fee amount to a reasonable figure. *See id.* at 502 (quoting the Supreme Court's observation, in *Purdue*, 559 U.S. at 553–54, that the "lodestar method was never intended to be conclusive in all circumstances"; "there is a 'strong presumption' that the [base] lodestar figure is reasonable," which may be overcome).

The hospitals appear to ground their "conclusiveness" argument in the lack of a qualifying counter-affidavit, arguing that their uncontroverted affidavits established reasonableness as a matter of law, as though there is no judicial role but to award the requested amount, relying on *Hunsucker v. Fustok*, 238 S.W.3d 421, 431 (Tex. App.—Houston [1st Dist.] 2007, no pet.). But the cases do not go so far. *Hunsucker*—which relied on *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam)—held that a trial court abused its discretion in

awarding no attorney's fees given that the claimant had filed an affidavit in support of a fee award and that affidavit was uncontroverted. *Hunsucker*, 238 S.W.3d at 432.

According to *Hunsucker*, the attorney "established the amount of attorney's fees as a matter of law," but the opinion also explains that the attorney did so because their affidavit was "clear, direct, positive," and not controverted. *Id.* The significance of that language comes from the case the opinion cites: *Ragsdale*. There, the Texas Supreme Court explained that an uncontroverted affidavit does not necessarily require a finding of reasonableness as a matter of law:

> In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted *by* any other witness or *attendant circumstances* and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to [cause] suspicion thereon. The court, as a trier of fact, may award attorneys' fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so. . . . In [some situations,] *the evidence may be uncontradicted, but the trial judge could find some of the claimed fees to be unreasonable, unwarranted, or some other circumstance which would make an award of the uncontroverted claim wrong*.

*Ragsdale*, 801 S.W.2d at 882 (emphasis added).

To be sure, summary judgment on attorney's fees is possible. *See Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 423 (Tex. App.—Fort Worth 2011, pet. denied). But the hospitals' argument that their affidavits compel an award in the amount they requested, if uncontroverted, goes beyond what the case law

36

supports. The trial court is not bound in this way. The trial court remains empowered to consider whether the "attendant circumstances" and "circumstances tending to [cause] suspicion" require an adjustment to the requested amount. *Ragsdale*, 801 S.W.2d at 882.

**D.    The trial court's ruling to grant the hospitals' objections to the Naths' counter-affidavits**

The Naths filed two counter-affidavits to challenge the hospitals' evidence of reasonableness of attorney's fees. The counter-affidavits were from Craig T. Enoch, former Justice of the Supreme Court of Texas, and A.G. Crouch, a 50-year practicing attorney.

**1.    Couch counter-affidavit**

The hospitals objected that the Crouch counter-affidavit "consists entirely of improper legal conclusions" and was conclusory. The trial court sustained the objections. We conclude the trial court did not abuse its discretion in doing so.

In his affidavit, Couch opined on whether a judgment was valid and on the legal effect of invalidity. He opined on when a judgment becomes final and the legal effect of that determination. And he opined on whether and how fees are available on a Section 1983 claim. These are legal conclusions that do not raise a fact question on the reasonableness and necessity of the fees sought. *See Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 895 (Tex. App.—Texarkana 2009, pet. denied). Following these legal conclusions, Couch added a single sentence at

the end of the affidavit that states, in a conclusory fashion, "The fees applied for are unsupported and have no viable color of being reasonable or necessary under the *Rohrmoos* test." The affidavit does not discuss the *Rohrmoos* test or explain the factual basis for that opinion. The hospitals' objections were properly sustained. *See id.*

### 2. Enoch counter-affidavit

The hospitals also objected to Enoch's counter-affidavit as conclusory, arguing that he "fail[ed] to tie any of his proffered reasons to the underlying facts of this case." They state that Enoch's declaration "makes it abundantly clear that he did not review Defendants' billing records." Further, "Enoch offers no factual basis for his conclusion" that the number of billable hours was unreasonable. And finally, "Enoch offers no factual support for his conclusion" that the hourly rates charged were, as they interpret his affidavit, "'about 60%' too high."

The hospitals presented their "conclusory" objections to Enoch's affidavit by excerpting sentences or, at times, portions of sentences from the affidavit and requesting the trial court to rule on each excerpt in isolation. For example, they sought to have the trial court find this statement conclusory: "I note both the excessively high billable rates for several of the attorneys, and the unusually high number of attorneys working on Texas Children's and Baylor College's various efforts."

38

Such excerpting from the longer affidavit took Enoch's statements out of context in several ways. First, the excerpt spliced off the beginning of that sentence. The sentence began with the phrase, "Applying the eight-factor test to fees charged for the necessary services . . . ." Removing from view the basis for the affiant's conclusion might cause the excerpted statement to appear conclusory but reading fragments in isolation is not how a court evaluates whether an affidavit is conclusory. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (in context of statutes, requiring that document be read as a whole, "reading all its language in context, and not reading individual provisions in isolation"); *BNSF Ry. Co. v. Chevron Midcontinent, L.P.*, 528 S.W.3d 124, 127 (Tex. App.— El Paso 2017, no pet.) (in context of a deed, stating that court will read a document "as one cohesive document" and will not "cherry-pick phrases and read them in isolation"); *see also United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993) (in criminal law context, "statements in an affidavit may not be read in isolation—the affidavit must be read as a whole").

The hospitals excerpted another part of a sentence from Enoch's affidavit and labeled it and the following sentence conclusory. Enoch stated,

> I conclude that the top rates charged before discounts ($1085, $1025, and $920 for Texas Children's and $995 and $750 for Baylor College) are not reasonable for fee shifting to be appropriate here. An hourly rate not to exceed about 60% of these fees would be reasonable based on the experience level of the attorneys involved in this case and the level of work required.

39

But that first sentence began with the phrase, "Based on my knowledge of the matters in this dispute. . . ." Thus, the hospitals' excerpt left off the stated basis for Enoch's conclusion.

Their excerpts also left off Enoch's explanation of how he developed his knowledge of the matters in dispute. Looking at the affidavit as a whole, Enoch explained that he has an "extensive litigation and appellate background" that allowed him to "become familiar with attorneys' billable rates in various regions of Texas, including Houston." He also discusses his personal familiarity with past litigation between Nath and the hospitals, which makes him "familiar with the skills required" to represent these parties in this dispute. He then explains that "[b]ased on [his] knowledge of the matters in this dispute, [he has] concluded that the top rates charged before discounts . . . are not reasonable . . . ." By cherry-picking phrases from the affidavit and having them evaluated in isolation, the hospitals distorted Enoch's statements.

Another example of such a distortion can be seen in the hospitals' claim that Enoch proposed that their fees were 60% too high. In fact, in context, Enoch opined that a reasonable rate, factoring in the complexity of the matter (of which he had past, personal knowledge) and the experience of these lawyers, is 60% of the rate charged, meaning the fees sought were 40% too high, not 60%. In a case

40

involving over a million dollars in fees to obtain summary dismissal, the difference is significant.

The percent error is not the only problem with this excerpt. Additionally, there is material explanation surrounding Enoch's conclusions that is missing. Enoch did not opine without context or foundation that the rates were unreasonable. He led his opinion with this explanation that was omitted from the hospitals' excerpt:

> Because of my extensive litigation and appellate background, I have become familiar with attorneys' billable rates in various regions of Texas, including Houston. Once again a client may choose to engage the services of law firms with high billable rates, but the standard to be followed is what would be the fee customarily charged by attorneys in the locality for similar legal services,[7] and considering the skill required (factors 1 and 3 above). I have been involved in various matters in litigation between Dr. Nath and Texas Children's and Baylor College. I am familiar with the issues, which are not complex, but heavily competed over by the attorneys, consequently I am familiar with the skill required. Based on my knowledge of the matters in dispute . . . [the rates charged were not reasonable].

Yet, the excerpts were ruled on, individually, without the material surrounding, contextual language.

---

[7] Just because a party chose an aggressive litigation strategy does not mean that party has a right to shift the full fee underlying that strategic choice. Instead, the test is what was necessary and reasonable in the market for the level of complexity involved, considering the experience level of the attorneys, and other factors. *See Rohrmoos*, 578 S.W.3d at 498.

We hold that the trial court abused its discretion in ruling on cherry-picked clauses from Enoch's counter-affidavit and finding them conclusory in isolation. We do not reach the issues of the reasonableness of these fees[8] because we have concluded that the trial court erred in its analysis of Enoch's affidavit and are remanding for the trial court to consider the Enoch counter-affidavit in its entirety, with each phrase and sentence read in the context of the whole.

In sum, we hold that the trial court's rulings as to the Crouch counter-affidavit are not erroneous. Crouch's affidavit states his conclusions about how the law should apply to the issues presented in the litigation. Such legal statements are not a proper basis to challenge the reasonableness and necessity of the attorney's fees requested. But we sustain the Naths' fourth issue as it relates to the trial court's analysis of Enoch's affidavit. We remand for the trial court to consider the Enoch counter-affidavit as a whole, with each phrase and sentence read in the context of the whole. That ruling will inform the trial court's analysis of the hospitals' motion for summary judgment on attorney's fees, should they pursue such a motion on remand.

---

[8] The trial court negated the evidentiary value of the counter-affidavit with its rulings. The court then awarded every dollar of attorney's fees the hospitals requested. The hospitals were awarded over $300,000 for past attorney's fees for a case dismissed in the preliminary stages of the litigation. The hospitals were awarded close to $900,000 in future appellate fees contingent on the Naths appealing the judgment. These future appellate fees are triple the past fees for defending matter-of-law arguments limited to the issues before the trial court on summary dismissal.

42

## Jury Trial on Attorney's Fees

The Naths contend that, to the extent that a fact issue exists on the reasonableness and necessity of the fees sought, they were entitled to a jury trial on the hospitals' fee claim. The hospitals respond that the Naths do not have a right to a jury trial on a fee claim where the fee claim is the only remaining issue.

We conclude that this issue is mooted by the remand for additional review of the evidence and a reconsideration of whether summary judgment was proper.

## Recusal

Finally, in their last issue, the Naths contend that the trial court erred in ruling on a recusal motion that they claim they never presented.

In their motion for new trial, the Naths requested the trial court recuse from the matter:

> This motion gives the Court the opportunity to extract itself from the untenable position of having to grade the paper of its back hallway suitemate by granting this motion, *signing an order of recusal*, and allowing the presiding administrative judge to assign the case to a retired or otherwise disinterested judge to review it from scratch without the appearances that overshadow the case presently . . . .

(Emphasis added.)

The basis for the Naths' claim of error is factually unsupported by the record. Their motion sought a recusal. They may have anticipated being granted a new trial first, but their motion requested a recusal all the same.

43

Because the record contradicts their claim of error, we overrule the Naths' final issue.

## Conclusion

We remand for additional consideration of the hospitals' claim that the Enoch affidavit is conclusory, with analysis of the affidavit as a whole, in the context of its explanatory language.


Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Hightower.